**TABOR, CHHABRA & GIBBS, P.A. and Darryl Gibbs, Appellants,**

**v.**

**MEDICAL LEGAL EVALUATIONS, INC. and Bruce L. Halbridge, M.D., Appellees.**

No. 01–06–01010–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 30, 2007.

Rehearing Overruled Nov. 8, 2007.

Anderson Lam Cao, Joel W. Mohrman, McGlinchey Stafford, PLLC, Houston, for Appellant.

Chris Di Ferrante, Chris Di Ferrante Attorney At Law, Houston, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and BLAND.

## OPINION

GEORGE C. HANKS, JR., Justice.

Appellants, Tabor, Chhabra & Gibbs, P.A. ("TCG") and Darryl Gibbs ("Gibbs"), filed this interlocutory appeal challenging the trial court's denial of their special appearance. In four issues, TCG and Gibbs

contend that the trial court erred in denying their special appearance because (1) there is legally and factually insufficient evidence to support some of the trial court's findings of fact, (2) several of the trial court's conclusions of law are erroneous, and (3) neither TCG's nor Gibbs's contact with the state of Texas gives rise to specific or general jurisdiction.[1] We reverse the order denying appellants' special appearance and remand with instructions to dismiss Tabor, Chhabra & Gibbs, P.A. and Darryl Gibbs for lack of personal jurisdiction.

## I. Background

### A. The Parties and Their Relationships

TCG is a Mississippi law firm without any offices, employees, clients, bank accounts, or property in Texas. Gibbs is an attorney and partner at TCG, who is licensed to practice law only in Mississippi. Like TCG, Gibbs has no offices, employees, clients, bank accounts, or property in Texas.

In 2002, TCG and Gibbs sought the services of The TASA Group, Inc. ("TASA"), a Pennsylvania-based referral company, in finding a medical expert to testify in the area of obstetrics and gynecology in a matter pending in a Mississippi state court.[2] The terms of the relationship between TASA and TCG were outlined in a Memorandum of Confirmation (the "Memorandum") addressed to Gibbs from a TASA representative.

The "Terms" of the Memorandum state the rate that TCG would pay for expert services and that the payment of the testifying expert's fees was to be through TASA—that is, all bills were to be payable

directly to TASA upon presentment. The Terms also state that the parties both agree to the exclusive concurrent jurisdiction and venue of the Montgomery County Court of Common Pleas of the Commonwealth of Pennsylvania and the U.S. District Court of the Eastern District of Pennsylvania for the resolution of "any disputes arising under this Memorandum" and that Pennsylvania law will govern the construction of the Memorandum. The Memorandum does not make any reference whatsoever to the State of Texas or Texas law. Finally, the Memorandum provides the following warning:

> [TASA] is not responsible for qualifying the Expert you use. It is your responsibility to review the Expert's qualifications directly with the Expert, including any resume, background, personal information, and vital statistics, so that you are certain that the Expert is qualified and credible in all respects and available for all of your needs.... In determining whether to use the Expert, you will rely solely and exclusively on your own investigation and judgment whether the Expert is qualified and credible.

Pursuant to this Memorandum, TASA referred appellees, Bruce Halbridge, M.D. and Medical Legal Evaluations, Inc. (collectively "Halbridge"), to TCG and Gibbs. Halbridge had previously served as a medical consultant for TCG in another lawsuit. According to the Memorandum, Halbridge was asked by TASA to make the initial contact with TCG.

Halbridge is a doctor licensed to practice medicine in Texas and in New York. He also serves as president of Medical

---

1. Because appellees, Medical Legal Evaluations, Inc. and Bruce L. Halbridge, M.D. (collectively "Halbridge") concede that general jurisdiction was not alleged as a basis for the exercise of personal jurisdiction in the trial court, we need not address TCG and Gibbs's fourth issue on appeal relating to general jurisdiction.

2. TASA was dismissed with prejudice from the instant dispute and is not a party to this appeal.

Legal Evaluations, Inc., a corporation located and incorporated in Texas that provides litigation consulting services in the area of medical malpractice. Halbridge's Agreement with TASA provided that his services were for TASA's client, not TASA. All work accomplished on behalf of a TASA client was to be billed through TASA. Halbridge was to send TASA the bill for his services, and TASA would pay Halbridge his share. The Agreement, which was governed by the laws of the Commonwealth of Pennsylvania, provided that "responsibility for payment rests with TASA's client, and not with TASA."

TCG and Gibbs accepted TASA's recommendation, and, over the course of the next three years, Halbridge, TCG, and Gibbs prepared for trial in Mississippi. During this period of time, TCG and Gibbs corresponded with Halbridge in his Texas office. According to Halbridge, all of his preparatory work for the Mississippi trial was done in Texas. Specifically, he testified by affidavit that, at his Houston office, he received medical records for his review and analysis. He also prepared his expert report from his Houston office and corresponded with attorneys from TCG by telephone. The only time Halbridge spent in Mississippi was the time he spent testifying at trial, a period of approximately two days.

According to TCG and Gibbs, Halbridge's testimony at trial went poorly. It was discovered on cross-examination that he had previously testified as an expert in areas in which he was not board certified. Gibbs sent a letter to TASA, in Pennsylvania, expressing his dissatisfaction with Halbridge's testimony. The letter stated, in relevant part, as follows:

It was my understanding after reading your mail out material and visiting your website that TASA prides itself as being the best of the best expert witness locator [sic] for attorneys anywhere.

With that said, I would assume most attorneys do not feel the need to do a background search of experts they hire through TASA assuming TASA would do their homework for us. We also assume this since TASA charges such a heavy fee for locating these experts. I want you to know Dr. Halbridge has a checkered past and in fact he admitted on the witness stand that he lists himself on the internet with over a dozen expert providers. I want to draw your attention to ALM Experts so that you know that Dr. Halbridge also holds himself out as a hair analysis expert. Please be advised that Dr. Halbridge is an OB-GYN yet still holds himself out on the Internet as a hair analysis expert. Please be advised that this was brought up at trial, a trial that we lost due to the lack of credibility of Dr. Halbridge.

Dr. Halbridge also testified that he has provided expert opinions in the past based on a breach of the standard of care for pulmonologists, internal medicine doctors, and emergency room physicians among others. This man will provide an expert opinion outside of his specialty at a moment's notice. I enclosed a copy of Dr. Halbridge's online petition for a Russian bride just so you can understand what we are dealing with. At this time, I am requesting a full refund of the experts fees I paid in regard to Felicia Wells's file. I know a lot of attorneys that practice medical negligence and I am a member of the Mississippi Trial Lawyers Association and American Trial Lawyers Association. I want TASA to right this wrong and refund the expert fees I paid in regard to the Felicia Wells' case.

Pursuant to this letter, TASA refunded the fees paid by TCG and Gibbs and did not tender payment to Halbridge for his services.

## B. The Lawsuit

Halbridge sued TCG and Gibbs alleging causes of action for contract claims for breach of contract and quantum meruit and tort claims for civil theft, defamation and business disparagement, and tortious interference with existing and prospective contractual relationships.[3] TCG and Gibbs responded by filing a motion to dismiss for lack of jurisdiction, which was treated as a special appearance by the trial court. In their special appearance, TCG and Gibbs alleged that they did not have sufficient minimum contacts with the state of Texas to support the exercise of personal jurisdiction. After a hearing on the motion, during which Rogen Chhabra and Darryl Gibbs testified pro se, the trial court denied TCG's and Gibbs's special appearance. In so doing, the trial court made the following findings of fact:

1. Plaintiff Medical Legal Evaluations, Inc. ("MLE") is a Texas Corporation.

2. Plaintiff Bruce L. Halbridge, M.D. ("Halbridge") is an obstetrician/gynecologist residing and practicing in Houston, Texas.

3. Defendant Tabor, Chhabra & Gibbs, P.A. ("TCG") is a Mississippi professional association of lawyers.

4. Defendant Darryl Gibbs ("Gibbs") is a lawyer residing and practicing in Mississippi.

5. The TASA Group, Inc. ("TASA") is a Pennsylvania corporation.

6. On or about Fall 2002, TCG contracted with TASA (the "TCG Contract") to find an expert witness for TCG's client in a Mississippi lawsuit ("the Engagement").

7. TASA contracted with "MLE and Halbridge" [sic] to perform the Engagement (the "TASA Contract").

8. After entering into the TASA Contract, TASA had no more duties under the TCG Contract except billings and collections.

9. After the TASA Contract was entered into, all Engagement activities were directed by TCG and Gibbs. These activities included assigning duties to Halbridge in Texas and Mississippi, sending letters and other materials to Halbridge in Texas, and scheduling Halbridge's Engagement activities in Texas and Mississippi, including his court appearance.

10. Most of Halbridge's Engagement activities were performed in Texas.

11. Following the Engagement, Gibbs and TCG were dissatisfied with MLE and Halbridge's performance. Apparently, the trial did not go well.

12. Gibbs and TCG sent a letter to TACA [sic] that MLE and Halbridge allege was defamatory and damaging to its/his professional reputation in Texas.

13. Gibbs and TCG did not pay TACA [sic] for the Engagement activities of MLE and Halbridge.

14. At the time of the Engagement, TACA [sic] advertised in Texas and used Texas telephone numbers, among others.

15. Any conclusion of law which also constitutes a finding of fact is adopted as finding of fact.

In addition, the trial court issued the following conclusions of law.

1. Any finding of fact which also constitutes a conclusion of law is adopted as a conclusion of law.

2. Defendants' Special Appearance was not sworn and is ineffectual as a

---

**3.** Halbridge also sued TASA, but it is not a party to this appeal.

matter of law to challenge this Court's jurisdiction. Defendants subsequently cured this defect by way of an Amended Special Appearance.

3. There is a substantial connection between TCG, Gibbs and the State of Texas arising from the Engagement.

4. The causes of action alleged herein arise from and relate to the Engagement.

5. Plaintiffs, Texas residents, are third party beneficiaries of the TCG Contract.

6. TCG and Gibbs recruited MLE and Halbridge, Texas residents, through the intermediary TACA [sic], for the Engagement.

7. There was some evidence adduced at the hearing that TACA [sic] is also located in Texas.

8. All factual disputes in the record of the Special Appearance hearing were resolved in favor of this Court's Order Denying the Special Appearance.

9. TCG and Gibbs purposefully availed themselves of the privilege of conducting activities in Texas such that they could reasonably anticipate being called into a Texas court.

10. The assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice, considering the burden on TCG and Gibbs, the interests of Texas in adjudicating the dispute, MLE and Halbridge's interest in obtaining convenient and effective relief, the interstate judicial system's interest in achieving the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

11. This Court has specific jurisdiction over the Defendants.

## II. Special Appearance

In their third issue, TCG and Gibbs argue that the trial court erred in denying their special appearance because their contacts with the state of Texas do not give rise to specific jurisdiction. We agree.

## A. Standard of Review

The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002); *Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 445–46 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Upon filing a special appearance, however, the nonresident defendant assumes the burden of negating all the bases of personal jurisdiction alleged by the plaintiff. *Marchand,* 83 S.W.3d at 793. The existence of personal jurisdiction is a question of law, reviewed de novo, but that determination must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex. App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). When, as here, the trial court issues findings of fact and conclusions of law, we may review the findings of fact on legal and factual sufficiency grounds and review the conclusions of law de novo as a legal question. *Silbaugh v. Ramirez,* 126 S.W.3d 88, 94 (Tex.App.-Houston [1st Dist.] 2002, no pet.). If there is more than a scintilla of evidence to support a factual finding, the legal sufficiency challenge fails. *Shell Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc.,* 84 S.W.3d 830, 836 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). A ruling will be reversed for factual insufficiency only if it

is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.*

 Although we may not review the conclusions of law for factual insufficiency, we may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Silbaugh,* 126 S.W.3d at 94. If a conclusion of law is erroneous, but the proper judgment was rendered, the erroneous conclusion of law does not require reversal. *BMC Software,* 83 S.W.3d at 794.

## B. Requirements of Personal Jurisdiction

 Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute [4] authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state guarantees of due process. *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.,* 184 S.W.3d 242, 248 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *BMC Software,* 83 S.W.3d at 795). The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991). Thus, the Texas long-arm statute requirements are satisfied if exercising personal jurisdiction comports with federal due process limitations. *Id.* We rely on precedent from the United States Supreme Court as well as our own state's supreme court in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *BMC Software,* 83 S.W.3d at 795.

 Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper if a nonresident defendant established "minimum contacts" with Texas and maintenance of the suit would not offend "traditional notions of fair play and substantial justice." [5] *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The minimum-contacts analysis requires that the defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Purposeful availment is the "touchstone of jurisdictional due process": "some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005) (quoting *Hanson v.*

---

4. The long-arm statute permits Texas courts to exercise personal jurisdiction over a non-resident defendant that "does business" in Texas. The statute provides that a nonresident "does business" in this state if the nonresident:
 (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
 (2) commits a tort in whole or in part in this state; or
 (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

5. In determining whether assumption of jurisdiction by the forum state would offend traditional notions of fair play and substantial justice, consideration is given to (1) the burden on the defendant, (2) the interest of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal Exch.,* 815 S.W.2d at 231.

Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Purposeful availment has at least three aspects. Id. at 785. First, only the defendant's forum-state contacts matter, not anyone else's. Id. Second, the contacts must be purposeful, not merely random, isolated, or fortuitous. Id. Third, a nonresident defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction, thus impliedly consenting to its laws. Id. A defendant's activities, whether they consist of direct acts within Texas or conduct outside of Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A defendant cannot be haled into a Texas court based on the unilateral acts of a third party. Michiana Easy Livin' Country, Inc. 168 S.W.3d at 784–85. Likewise, if a defendant's Texas contacts are random, fortuitous, or attenuated, a defendant is not subject to jurisdiction here. Id. It is the quality and nature of the defendant's contacts, rather than their number, that are important to our analysis. See IRA Resources, Inc. v. Griego, 221 S.W.3d 592, 597 (Tex.2007). A defendant may purposefully avoid a particular forum by structuring its transaction in such a way as to neither profit from nor avail itself of the benefits of the forum state's laws. See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex.2007).

■■■■ A defendant's contacts with a forum can give rise to either general or specific jurisdiction. CSR Ltd. v. Link, 925 S.W.2d 591, 595 (Tex.1996). Specific jurisdiction is established if the defendant's liability arises from, or is related to, an activity conducted within the forum. Id. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. Blair Commu-

nications, Inc. v. SES Survey Equip. Servs., Inc., 80 S.W.3d 723, 727 (Tex.App.-Houston [1st Dist.] 2002, no pet.). For a nonresident's forum contacts to support the exercise of specific jurisdiction, the contacts must be purposely directed at or take place within the forum and there must be a "substantial connection" between those contacts and the operative facts of the litigation. See Moki Mac River Expeditions, 221 S.W.3d at 585. The focus of the inquiry must be the nature of the contacts and the "nexus" these contacts create with the forum state. See McDermott v. Cronin, 31 S.W.3d 617, 621–22 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

## C. Jurisdictional Analysis

■■■ For a Texas forum to properly exercise specific jurisdiction in this case, (1) TCG and Gibbs must have made minimum contacts with Texas by purposefully availing themselves of the privilege of conducting activities here and (2) TCG's and Gibbs's liability must have arisen from or be related to those contacts. See Moki Mac River Expeditions, 221 S.W.3d at 576. Merely contracting with a Texas citizen does not, by itself, satisfy these requirements. Trigeant Holdings, Ltd. v. Jones, 183 S.W.3d 717, 725 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).

Halbridge asserts that TCG and Gibbs established sufficient minimum contacts by (1) contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents for employment inside or outside of Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042. TCG and Gibbs argue that the trial court lacks specific jurisdiction over them because they met their burden of negating each of the poten-

tial jurisdictional bases. We address each jurisdictional basis individually.

### 1. Contracting with a Texas Resident

TCG and Gibbs initially argue that the trial court lacked specific jurisdiction because (1) no contract with Halbridge exists and (2), even if a contract did exist, a single contract is not sufficient to establish specific jurisdiction. Halbridge concedes that there was no written contract between himself and TCG and Gibbs. Nevertheless Halbridge argues that he was a third-party beneficiary to the contract between TCG, Gibbs, and TASA and the parties' continuing obligations to one another under the Memorandum are sufficient minimum contacts to establish that TCG and Gibbs "purposefully availed" themselves of the privilege of conducting activities within Texas and that there was a substantial connection between the contract and the operative facts of this litigation. We disagree.

### a. Third–Party Beneficiary

▆▆▆▆ In determining whether a third party has the right to enforce a contract, courts look to the express intent of the contracting parties. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999). There is a presumption against the existence of third party beneficiary contracts. *See id.* A court should not imply or create third-party-beneficiary rights unless they are expressly intended by the contracting parties and plainly and fully spelled out in the four corners of the contract. *EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist.,* 176 S.W.3d 330, 340 (Tex. App.-Houston [1st Dist.] 2004, pet. dism'd). Thus, courts should presume that an agreement confers no third-party-enforcement rights unless it "clearly appears" that the contract intends a third party to benefit, to the point of suing upon the contract. *MCI Telecomms.,* 995 S.W.2d at 651. Accordingly, a contract does not confer third-party-beneficiary rights unless: (1) the contract plainly expresses the third-party obligation of the bargain-giver, (2) it is unmistakable that a benefit to the third party is within the contemplation of the primary contracting parties, and (3) the primary parties contemplate that the third party would be vested with the right to sue for enforcement of the contract. *EPGT Tex. Pipeline,* 176 S.W.3d at 340. The fact that a third party receives incidental benefits from a contract does not establish a right of action to enforce the contract. *MCI Telecomms.,* 995 S.W.2d at 650.

Even if Halbridge could prove that he was a third-party beneficiary of the agreement between TASA and TCG and Gibbs, the agreement here does not subject TCG and Gibbs to jurisdiction in Texas because it is between TASA, a Pennsylvania resident, and TCG and Gibbs, who are both from Mississippi. Moreover, nothing in the agreement directs or requires performance in Texas. *See Burger King,* 471 U.S. at 488, 105 S.Ct. at 2192. Thus, an allegation of third-party beneficiary status relating to this contract is insufficient to confer jurisdiction by a Texas court. Rather, Halbridge was required to establish a "substantial connection" between the agreement and the state of Texas sufficient to warrant the exercise of specific jurisdiction and satisfy federal constitutional due process requirements. *See Moki Mac River Expeditions,* 221 S.W.3d at 585. As explained below, Halbridge did not make this showing.

### b. Parties' Continuing Obligations

▆▆▆ Halbridge argues that there is a substantial connection between the contract and the State of Texas and the parties' "continuing obligations" to one another as a result of the Memorandum are sufficient minimum contacts to establish that TCG and Gibbs "purposefully availed"

themselves of the privilege of conducting activities within Texas. Despite the language of the Memorandum, to which he claims to be a third-party beneficiary, stating that all disputes concerning the Memorandum are to be resolved in Pennsylvania courts and according to Pennsylvania law, Halbridge argues that (1) his preparatory work completed in his Houston office and (2) the correspondence between TCG and Gibbs and Halbridge in Texas are sufficient to warrant the exercise of specific jurisdiction in this case. We disagree.

The decision to prepare for the Mississippi trial in Texas was Halbridge's unilateral decision, and there is no language in the Memorandum requiring that Halbridge perform any work in Texas. There is no evidence in the record that either TCG or Gibbs requested that Halbridge review and analyze relevant medical records in Texas, nor is there any indication that TCG or Gibbs requested that Halbridge prepare his expert report in Texas. TCG's and Gibbs's correspondence with Halbridge, in his Texas office, stemmed from Halbridge's decision. A nonresident defendant, however, may not be haled into a Texas court based on the unilateral acts of a third party. *Michiana,* 168 S.W.3d at 784–85. Furthermore, even had there been a contract,

> an exchange of communications in the course of developing and carrying out a contract does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law. Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state.

*Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 312 (5th Cir.2007) (citations omitted).

For these reasons, we hold that TCG and Gibbs did not contract with a Texas resident when either party was to perform the contract in whole or in part in Texas, and the exercise of specific jurisdiction based on the Memorandum's existence and Halbridge's allegations of defendants' conduct regarding the Memorandum would not comport with federal constitutional due process requirements. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1).

**2. Committing a Tort in Texas**

TCG and Gibbs next argue that the trial court lacked specific jurisdiction because there is an insufficient nexus between their alleged conduct in the commission of the torts of defamation and business disparagement, tortious interference, or civil theft and the state of Texas. We address each of these causes of action in turn.

**a. Defamation and Business Disparagement**

■ Halbridge's pleadings allege that Gibbs's letter to TASA, demanding a refund of the fees paid to TASA for Halbridge's services, contained defamatory statements. Specifically, Halbridge alleged that,

> TASA declined to send MLE the amount forwarded to it by [TCG] for transmission to MLE following the [ ] trial because Gibbs stated to TASA that Halbridge's testimony was ridiculous. This statement was false, it was made intentionally and maliciously, and with specific intent to harm Halbridge. Gibbs and [TCG] knew at the time the statement was made that Halbridge was licensed to practice medicine in Texas, and further they knew that Halbridge maintained an active medical and consulting practice in Texas.

■ "The tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984); *see De Prins v. Van Damme,* 953 S.W.2d 7, 14 (Tex.

App.-Tyler 1997, writ denied) ("[T]ort of slander occurs in the state in which it is heard, i.e., published or circulated."). Here, the letter, written by Gibbs in Mississippi, was sent to TASA in Pennsylvania. The letter was never circulated in Texas.

Nevertheless, relying on Supreme Court authority in *Calder v. Jones*, Halbridge argues that, because the reputational injury stemming from Gibbs's statement was suffered in Texas, the exercise of specific jurisdiction over this action in Texas is warranted. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). His reliance on *Calder* in support of this argument is misplaced. In *Calder*, respondent, a professional entertainer who lived and worked in California and whose television career was centered there, brought suit in a California court, alleging that she had been libeled in an article written and edited by petitioners in Florida and published in the National Enquirer, a national magazine having its largest circulation in California. *Id.* at 784–85, 104 S.Ct. at 1484–85. In holding that the Florida petitioners were subject to the personal jurisdiction of the California court, the United States Supreme Court noted that,

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788–89, 104 S.Ct. at 1486. The Texas Supreme Court has warned that, in applying *Calder*, we should be mindful of shifting our focus from " 'the relationship among the *defendant*, the forum, and the litigation' to the relationship among the '*plaintiff*, the forum … and the litigation.' " *See Michiana*, 168 S.W.3d at 790. "The important factor was the extent of the defendant's activities, not merely the residence of the victim." *Id.* at 789.

The facts of the instant case are distinguishable from those in *Calder*. In this case, unlike in *Calder*, the state in which specific jurisdiction is sought is not the focal point of the alleged unlawful statements. Here, the allegedly libelous letter concerned Halbridge's statements in a Mississippi court, not in Texas. This letter was sent only to a TASA representative in Pennsylvania. It was not sent to Texas. While his medical practice and consulting business is centered in Texas, Halbridge does testify in matters pending outside of Texas, as is evident from his testimony in Mississippi for TCG and Gibbs and his registry with national expert-referral companies. While some of Halbridge's alleged reputational injury may be suffered in Texas, Texas is not the focus of the allegedly defamatory statement. Thus, there is not a substantial connection between the defendants' alleged conduct and the state of Texas sufficient to warrant the exercise of specific jurisdiction. *See Moki Mac River Expeditions*, 221 S.W.3d at 575. The mere fact that it was foreseeable that an alleged libelous letter would have some effect in Texas is not a sufficient basis for an assertion of jurisdiction over a nonresident defendant. *See De Prins*, 953 S.W.2d at 14. The record contains no evidence of any marketing efforts directed to Texas by TCG and Gibbs in connection with the use of Halbridge's services of the type that creates a nexus with the state of Texas sufficient to warrant the exercise of specific jurisdiction. *See Moki Mac River Expeditions*, 221 S.W.3d at 577 (no specific jurisdiction where, among other things, the out-of-state defendant solicited Texas resi-

dents through mass mailings and targeted direct-marketing e-mail campaigns). Accordingly, we hold that the exercise of specific jurisdiction based on defendants' letter to TASA would not comport with federal constitutional due process requirements under the facts of this case.

### b. Tortious Interference

We next address Halbridge's tortious interference claim, in which he alleges that TCG and Gibbs "willfully and intentionally interfered with [his contract with TASA] by defaming [him] with the intent to encourage TASA to withhold funds due to MLE." To establish liability for interference with a prospective contractual or business relation, Halbridge must prove that he was harmed by conduct on the part of TCG and Gibbs, which was either independently tortious or unlawful. *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex.2001). Conduct that would violate some other recognized tort or duty is "independently tortious." *Id.* Similarly, the elements of tortious interference with an existing contract claim include an act of willful or intentional interference. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). Here, Halbridge has pleaded Gibbs's allegedly defamatory statement as the "independently tortious" or willful and intentional act of interference. The tort of defamation thus underlies Halbridge's tortious interference claims. Because we have concluded that Halbridge's allegations concerning the alleged defamation are insufficient to warrant the exercise of specific jurisdiction, we also conclude that the same allegations, which also support Halbridge's claim for tortious interference with existing and prospective contractual relations, are insufficient to support the exercise of specific jurisdiction in this case.

### c. Civil Theft

We next address Halbridge's civil theft of services claim under chapter 134 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 134.001–.005 (Vernon 2005). The entirety of Halbridge's pleadings on civil theft state that he "incorporates each of the foregoing factual allegations herein as if fully set forth. [TCG and Gibbs] have violated the Texas Theft Liability Act. As a result of their acts constituting theft of service, [Halbridge] has been damaged in an amount which exceeds the minimum jurisdictional limits of the Court. [Halbridge] seeks recovery of its actual damages, and reasonable and necessary attorney's fees as provided for in the Act." Halbridge points to no new or additional contacts with the state of Texas to support his civil theft cause of action. As we have previously determined, the exercise of specific jurisdiction based on the allegations of the parties' "continuing obligations" to one another as a result of the Memorandum contacts and factual allegations in Halbridge's breach of contract, defamation, and tortious interference claims would not comport with federal constitutional due process requirements. These same facts likewise cannot support the exercise of specific jurisdiction under Halbridge's civil theft claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2).

### 3. Recruiting Texas Residents for Employment[6]

---

**6.** TCG and Gibbs argue that Halbridge waived this jurisdictional basis because he failed to assert it in his pleadings. The jurisdictional section of Halbridge's amended petition alleges that TCG and Gibbs are doing business in Texas by "entering into contracts by mail or otherwise with Texas residents where either party is to perform the contract in whole or in part in Texas, by advertising its services nationwide and in Texas and by committing torts in Texas and/or committing torts directed at Texas residents." Thus, Halbridge did not specifically list the recruitment of a Texas resident for employment as a basis for jurisdiction in his pleadings. He did, howev-

TCG and Gibbs finally argue that the trial court lacked specific jurisdiction because TASA, the intermediary through which Halbridge alleges TCG and Gibbs recruited him, is not located in the state of Texas. Specifically, TCG and Gibbs argue that the third subsection of the long-arm statute—providing that a nonresident defendant "does business" in Texas if it "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside of this state"—requires that the intermediary have a physical presence in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(3). In response, Halbridge argues that, because TASA maintained a local Texas telephone number and advertised in Texas publications, it was amenable to jurisdiction in Texas and, thus, is "located" in Texas for purposes of the long-arm statute.[7]

As both parties note, the term "located" is undefined by statute, and we have found no case law providing a definition. Assuming, without deciding, that TASA is "located" in Texas for purposes of the long-arm statute, the issue whether TCG and Gibbs recruited Halbridge remains. In *BHP de Venezuela, C.A. v. Casteig*, the Corpus Christi Court of Appeals considered whether a Venezuelan corporation's contacts were sufficient to confer specific jurisdiction where the Texas plaintiff alleged that, pursuant to an agreement between the foreign corporation and his Texas-based employer, he had been recruited to perform consulting services for the corporation in Venezuela. 994 S.W.2d 321, 328 (Tex.App.-Corpus Christi 1999, pet. denied). The Corpus Christi court held that the Venezuelan corporation had not recruited the Texas plaintiff for employment because the agreement between the foreign corporation and the plaintiff's Texas-based employer contained no language indicative of recruiting, and the Texas resident unilaterally sought the employment of his Texas-based employer. *Id.*

Here, while Halbridge had consulted with TCG on a prior medical malpractice case, there is nothing in the record which suggests that either TCG or Gibbs had any involvement in selecting Halbridge as the TASA-recommended expert witness in the present dispute. Rather, the Memorandum from TASA to TCG and Gibbs indicates that TASA asked Halbridge to make the initial contact. There is no other language in the Memorandum that is indicative of any recruiting on the part of TCG or Gibbs. For this reason, we conclude that TCG and Gibbs did not recruit Halbridge for employment inside or outside of this state, and the exercise of specific jurisdiction based on the allegations of recruitment would not comport with federal constitutional due process requirements. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(3); *see also Casteig*, 994 S.W.2d at 328.

For the reasons stated above, TCG and Gibbs are not subject to the exercise of

---

er, assert this basis in his written response to TCG's and Gibbs's special appearance and in his arguments at the special appearance hearing. Rule 120a(3) of the Texas Rules of Civil Procedure provides that "[t]he court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX R. CIV. P. 120a(3). Because the rule does not limit the court to determin-

ing the special appearance on the pleadings alone, we conclude that this argument is presented for our review.

7. Suzanne Olita, TASA's president, testified that all calls made to the Texas telephone number are forwarded directly to Pennsylvania. "There is no answering service or other person physically present in Texas answering telephones or conducting any other business in Texas."

personal jurisdiction by the trial court, and we hold that the trial court erred in making the legal conclusion that it had specific jurisdiction over them. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042; *Tri–State*, 184 S.W.3d at 248.

Accordingly, we sustain TCG's and Gibbs's third issue. Because our holding that the trial court lacks specific jurisdiction is dispositive of this interlocutory appeal, we do not reach TCG's or Gibbs's first or second issues.

### III. Conclusion

We reverse the order denying appellants' special appearance and remand with instructions to dismiss Tabor, Chhabra & Gibbs, P.A. and Darryl Gibbs for lack of personal jurisdiction.