Opinion issued August 11, 2011.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01001-CV

———————————

Jerry Wilkerson, Appellant

V.

RSL Funding,
L.L.C., Appellee



 



 

On Appeal from the 125th District Court

Harris County, Texas



Trial Court Case No. 2009-76347

 



 

DISSENTING OPINION

          This
case of first impression is important to the jurisprudence of Texas.  It addresses the question of whether a
non-Texas resident who uses interactive local websites allegedly to defame a
Texas resident is subject to the same jurisdictional standards as a non-Texas
resident who uses local print media allegedly to defame a resident.  

Appellee, RSL Funding, L.L.C.
(“RSL”), a Houston, Texas company, sued appellant Jerry Wilkerson, a non-Texas
resident, for defamation, libel, and business disparagement for posting
allegedly defamatory comments on local Houston Yahoo! and local Houston Yelp
websites.  In this interlocutory appeal,
Wilkerson appeals the trial court’s order denying his special appearance.  In dismissing this case for lack of
jurisdiction over Wilkerson, the majority converts the requested review of
whether the evidence is legally sufficient to enable Wilkerson to avoid the
reach of Texas’ long-arm statute into an objection of its own to the
competency of RSL’s evidence to establish the jurisdictional fact that
Wilkerson used www.local.yahoo.com to publish his comments—a matter not presented to the trial court and
not in dispute.  In doing so, the
majority not only erroneously raises the competency of the evidence to support
the trial court’s implied findings sua
sponte on appeal, but also erroneously shifts the burden of proof from
Wilkerson, to negate the jurisdiction of the Texas courts over him, to RSL, to
prove it.  Finding the jurisdictional evidence
incompetent to support the fact that Wilkerson used www.local.yahoo.com, pursuant
to its sua sponte review, the
majority erroneously goes on expressly to decline to apply the legal test for
the determination of jurisdiction over users of interactive websites—which it
acknowledges both local.yahoo.com and yelp.com are—on the ground that Wilkerson
did not own and operate the websites on which he posted his comments.  By this means, it reaches the erroneous legal
conclusion that the case must be dismissed for insufficient evidence of the
court’s jurisdiction over Wilkerson and dismisses the case.  The majority thus derails an important case
of first impression in a developing area of law in which internet website
owners, search engine operators, and users are all in need of the legal
guidance expressly sought by the parties here as a matter of law, not fact. 

I respectfully dissent.  I would hold that this Court is called upon
to review and apply the law governing personal jurisdiction over the users of interactive
websites, not to review the evidence as to whether Wilkerson used local Yahoo!
or as to whether the site is interactive. 
Applying the legal test for determining jurisdiction over the users of
interactive websites, I would hold that by using the interactive local Yahoo!
website for Houston and the interactive Yelp website for Houston to post
allegedly defamatory comments about a local Houston, Texas business, appellant
subjected himself to the long-arm jurisdiction of Texas. 

Background

          Wilkerson
is a California resident.  RSL is a Texas
company that specializes in factoring structured settlement payments.  Wilkerson’s daughter, Trisha Marlene
Wilkerson (“Trisha”), also a California resident, won the California State
Lottery.  Trisha and RSL entered into an
agreement by which Trisha assigned a portion of her future lottery payments to
RSL in exchange for a lump sum payment from RSL that she intended to use to
purchase a home.  Wilkerson apparently
aided Trisha in conducting this business with RSL.  As Trisha completed her business transaction
with RSL, Wilkerson, who was unhappy with RSL’s interaction with Trisha, posted
comments regarding RSL on two different websites specific to Houston,
Texas—local.yahoo.com for Houston and yelp.com for Houston.[1]

          On
the local Houston Yahoo website, Wilkerson stated, inter alia, that “dealing with all of the lies by Jim Kelly [one of
RSL’s Houston employees] and the non returned promised phone calls by Jim and
Mr. Sanchez from accounting” had been “by far the worst experience I have had
in my 64 years of life”; that “RSL has lied repeatedly to us and misled us and
have caused numerous delays in this project that still has yet to be funded”;
that “[b]ecause of all the problems with [RSL] and their violating the
contract, we are in the process of a law suit against them and if there is
anyone else out there who have had similar experiences with [RSL], please join
us in a class action law suit”; and, “Try calling any of their offices, N.Y.,
L.A., Atlanta etc and you will find that there are no offices there, only phone
numbers that are transferred to the Houston Office.  Very clever and manipulating of them.  Just goes to show how they really conduct
business, smoke and mirrors.”

In his second Houston
local.yahoo.com comment, Wilkerson stated, “Received our check today and now we
are able to find out why RSL was so arrogant and mean and delaying everything.  They did not have the money.  The check is no good NSF, non sufficient
funds.  Guess their word is as good as
their check.”  The local Houston Yahoo!
page on which Wilkerson made his comments contained a map and photograph of
RSL’s Houston office.

On Yelp’s Houston website,
Wilkerson wrote, “Received the check today from RSL and guess what, it appears
their word is as good as their check[.] 
NSF NON SUFFICIENT FUNDS.  I can
see why they treated us so badly and were so rude and inconsiderate and kept
delaying, because they don’t have the money. 
What a joke they are.”  This
webpage, too, contained both a map and photograph of RSL’s Houston office.

          RSL
filed this suit against both Trisha and Wilkerson on November 25, 2009,
alleging defamation, libel, and business disparagement.  Trisha and Wilkerson both filed special
appearances supported by their affidavits. 
The evidence established that Trisha was not involved in any way with
the allegedly defamatory and libelous statements posted by Wilkerson.  Her special appearance was granted, and
Wilkerson’s was denied. 

Wilkerson’s affidavit declared that
he is a resident of California, does not own any real or personal property in
Texas, has never owned any business in Texas, has never specifically directed
any opinion or statement of fact concerning RSL to anyone in Texas, and has
only traveled through Texas on one occasion. 
Wilkerson also averred that he found the websites to which he posted his
comments by performing a Google search and did not “direct, or target, Houston,
or Texas in general when I posted my review concerning RSL.”  He further stated that he does “not know how
to target a specific location when posting reviews on the internet” and “did
not attach a map or a photograph of RSL’s location or building when [he] posted
[his] review of RSL on the internet,” nor does he know how to include such
attachments.

          RSL
responded to Wilkerson’s special appearance by arguing that Wilkerson
purposefully directed his actions at Texas. 
RSL supported its response with the affidavit of Stewart A. Feldman, the
Chief Executive Officer of RSL, who averred that Houston is RSL’s principal
place of business.  Feldman stated,

The Yelp Web site is an
interactive site that offers interactive forums where users can post comments
and communications regarding various businesses.  The Yelp Web site has influence and a large
audience in RSL’s financial services industry, so that defamatory posts made on
the Yelp Web site are particularly likely to cause injury to the reputation of
RSL.

 

Feldman also averred that both local.yahoo.com and
yelp.com “use geographic location as the key to their respective search
options” and are “intended to help a searcher find information in specific
geographic areas.”  Feldman stated that
“[m]ore likely than not it will be residents of the Houston area in particular,
or Texas residents in general, that will search RSL Funding located in Houston,
Texas.”  RSL also provided evidence that
the check it gave to Trisha was in fact a good check and that Trisha was able
to use the funds from the check to purchase her home.  

Personal Jurisdiction

In his sole issue, Wilkerson argues
that the trial court erred in denying his special appearance.

Here, the question is whether
Wilkerson’s acts of posting allegedly defamatory and libelous statements on
interactive websites that provide communications about local Houston businesses
are, by themselves, sufficient to support the exercise of personal jurisdiction
over him.  

In the context of establishing a
Texas court’s jurisdiction over a company doing business in Texas, courts have
characterized internet usage as falling within three categories on a sliding
scale.  See, e.g., Choice Auto
Brokers, Inc. v. Dawson, 274 S.W.3d 172, 177–78 (Tex. App.—Houston [1st
Dist.] 2008, no pet.); Michel v. Rocket
Eng’g Corp., 45 S.W.3d 658, 677 (Tex. App.—Fort Worth 2001, no pet.).  At one end of the sliding scale are websites
that are “clearly used for transacting business over the Internet,” such as
entering into contracts and the knowing and repeated transmission of files of
information.  Dawson, 274 S.W.3d at 177. 
These websites may be sufficient to establish minimum contacts with a
state.  Id.  On the other end of the
scale are “passive” or “informational” websites that are used only for purposes
such as advertising and “are not sufficient to establish minimum contacts even
though they are accessible to residents of a particular state.”  Id.
at 177–78.  Between the extremes of the
scale are “interactive” websites that allow for the “exchange of information
between a potential customer and a host computer.”  Id.  Courts determine jurisdiction in situations
involving an interactive website by examining the degree of interaction between
the parties.  Id.; see also Karstetter v.
Voss, 184 S.W.3d 396, 405 (Tex. App.—Dallas 2006, no pet.) (characterizing
eBay as interactive website and concluding that court had “to look beyond the
internet activity to the degree of interaction between the parties.”). 

The two websites used by Wilkerson
were clearly interactive—they
allowed for the “exchange of information between a potential customer and a
host computer.”  See Dawson, 274 S.W.3d at 178; Karstetter,
184 S.W.3d at 405.  Therefore, the degree of interaction
between the parties must be examined to determine jurisdiction.  See
Dawson, 274 S.W.3d at 178.[2]  

Here, the contact in question is an
individual’s direct use of the internet to commit, allegedly, the torts of
libel, defamation, and business disparagement. 
Thus, as we determine the “degree of interaction” between the parties in
this case, we also look to other libel and defamation cases that involved the
distribution of tortious statements to broad audiences to determine whether
Wilkerson’s contact with Texas via the internet is sufficient to satisfy the
minimum-contacts requirement.  See Revell v. Lidov, 317 F.3d 467, 471–72
(5th Cir. 2002) (holding that sliding scale used to evaluate internet contacts
is still applicable in defamation case, in spite of defamation cause of
action’s “unique features,” concluding that sliding scale is compatible “with
the ‘effects’ test of Calder v. Jones[,
465 U.S. 783, 104 S. Ct. 1482 (1984),] for intentional torts,” and stating, “we
must evaluate the extent of [the interactivity between parties on internet
“bulletin board”] as well as [appellant’s] arguments with respect to Calder”); see generally Touradji v.
Beach Capital P’ship, L.P., 316 S.W.3d 15, 24–25 (Tex. App.—Houston [1st
Dist.] 2010, no pet.) (“We focus our analysis on the relationship among the
non-resident, the forum, and the litigation to determine if the alleged
liability arises from or is related to an activity conducted in Texas.”).

The tort of libel is generally held
to occur wherever the offending material is circulated.  Tabor,
Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc., 237 S.W.3d 762,
774 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777, 104 S. Ct.
1473, 1479 (1984)). In Calder, an entertainer who lived and
worked in California brought suit in California alleging that she had been
libeled by Florida residents in an article printed in the National Enquirer.  465 U.S.
at 784–85, 104 S. Ct. at 1484–85.  The
Supreme Court held that the California court had personal jurisdiction over the
Florida defendants because

[t]he allegedly libelous
story concerned the California activities of a California resident.  It impugned the professionalism of an
entertainer whose television career was centered in California.  The article was drawn from California
sources, and the brunt of the harm, in terms of both respondent’s emotional
distress and the injury to her professional reputation, was suffered in
California.  In sum, California is the
focal point both of the story and of the harm suffered.

 

Id. at 788–89,
104 S. Ct. at 1486.  However, “[t]he
Texas Supreme Court has warned that, in applying Calder, we should be mindful of shifting our focus from ‘the
relationship among the defendant, the
forum and the litigation’ to the relationship among the ‘plaintiff, the forum . . . and the
litigation.’”  Tabor, Chhabra & Gibbs, 237 S.W.3d at 775 (quoting Michiana Easy Livin’ Country, Inc. v. Holten,
168 S.W.3d 777, 790 (Tex. 2005)).

          This
Court has applied the law set out by the Supreme Court in Calder and Keeton to find
that a Texas court could properly exercise personal jurisdiction over a
non-resident defendant in a defamation case for the distribution of allegedly
defamatory printed material in Texas and elsewhere.  Paul
Gillrie Inst., Inc. v. Universal Computer Consulting, Ltd., 183 S.W.3d 755,
761 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  In that case, the Paul Gillrie Institute
allegedly defamed a corporation with its headquarters and principal place of
business in Texas and mailed the trade publication containing the article to
subscribers across the country, including approximately fifty subscribers in
Texas, some of whom were customers of the corporation.  Id. at
760–61.

I would hold that this case is
similar to Calder and this Court’s
prior case in Gillrie in that the
non-resident defendant’s conduct was purposefully directed at Texas.  Specifically, Wilkerson’s posting of
allegedly defamatory statements regarding a Houston business on local websites
that review Houston, Texas businesses was purposely directed at visitors to
those targeted local websites, including consumers seeking information
regarding the provision of financial services by Houston businesses.  Wilkerson’s posts referred to a Texas
company, specifically named two of its Texas employees and its accounting
department, made factual statements about its provision of financial services
that RSL contends were false and defamatory, and solicited participants in a
class action lawsuit against the company. 
Wilkerson made his comments on websites that included a map and
photograph of RSL’s Houston offices and that would be of particular interest to
Texas residents investigating local firms that provide financial services, like
RSL.  Wilkerson complained of RSL’s acts
undertaken in Texas, and—as the
allegedly defamatory posts indicate—Wilkerson was aware that RSL is a resident of and has its principal place
of business in Texas, where any harm was suffered.  See BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002) (holding that foreseeability of causing
injury in Texas, though not determinative, is important consideration in
establishing minimum contacts).  

I would hold that Wilkerson’s
“interaction” with Texas by posting his allegedly defamatory and libelous
statements online on local.yahoo.com’s Houston website and yelp.com’s Houston
website is sufficient to support the trial court’s exercise of personal
jurisdiction over him.  See Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 577 (Tex. 2007) (holding that sufficient minimum contacts exist
when non-resident defendant “purposefully directed action toward Texas”); Tempest Broad. Corp. v. Imlay, 150
S.W.3d 861, 875 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that
single, substantial act can support exercise of personal jurisdiction).

Wilkerson argues that he did not
purposefully avail himself of the benefits of “doing business” in Texas.  He states in his affidavit that he did not
intentionally direct his actions to Texas, because he only performed a Google
search and posted a review of RSL on the websites the search returned, and he
did not attach the maps or photographs to his posts and did not know how to do
so.  However, this evidence does not
overwhelm the other evidence in the record already discussed.  

Wilkerson also argues that Revell and Pearl v. Abshire support his claim that the trial court cannot
properly exercise personal jurisdiction over him.  I would hold that this case is
distinguishable from both cases.  In Revell, the Fifth Circuit held that the Texas
court could not exercise personal jurisdiction based on an allegedly defamatory
article posted to an internet bulletin board because 

the article written by Lidov
about Revell contains no reference to Texas, nor does it refer to the Texas
activities of Revell [the resident plaintiff], and it was not directed at Texas
readers as distinguished from readers in other states.  Texas was not the focal point of the article
or the harm suffered, unlike Calder,
in which the article contained descriptions of the California activities of the
plaintiff, drew upon California sources, and found its largest audience in
California.

 

Revell, 317 F.3d
at 473 (citing Calder, 465 U.S. at
788, 104 S. Ct. at 1482).  As already
discussed, Wilkerson’s posts were made on websites that distribute reviews of
local Houston businesses, specifically referred to RSL’s Houston office and to
specific employees in the Houston office, made factual statements that
complained of RSL’s Texas activities as a provider of financial services, and
were directed to a medium that would be more likely to reach Texas readers than
readers in other states, specifically including actual and potential customers
of RSL and of other financial services providers in the Houston area.  Furthermore, Texas was the focal point of
Wilkerson’s posts and of any harm suffered.

          In Pearl v. Abshire, the Fort Worth Court
of Appeals held, in a memorandum opinion, that the Texas court did not have
personal jurisdiction over Pearl, the non-resident defendant, based on his
posting of messages on the Yahoo! Finance AXA internet message board.  No. 02-08-286-CV, 2009 WL 1996288, at *1, *4
(Tex. App.—Fort Worth July 9, 2009, no pet.) (mem. op.).  The Fort Worth court concluded that 

Pearl’s internet connections
with Texas were in fortuitous response to the postings of a Texas resident,
Abshire.  By his own admission, Abshire
[the resident plaintiff] purposefully posted messages in an attempt to prompt
Message Board readers like Pearl [the non-resident defendant] to respond, and
he acknowledged that his posts had, from time to time, provoked vitriolic
responses.  There is no evidence that
Pearl ever posted any message about Abshire, except in response to, and shortly
following, an initiating post by Abshire. 
Although some statements reference Texas, there is no evidence that
Pearl directed his statements at Texas other than the fact that Abshire
happened to be located in Texas at the time Pearl’s messages were posted.

 

Id. at *4.  Here, however, Wilkerson deliberately sought
a forum in which he could post his statements regarding RSL by performing a
Google search, and he posted them in a way that focused on a Texas business,
the actions of a Texas resident that were undertaken in Texas, and the
consumers of Texas financial services. 
Thus, Pearl does not apply in
the instant case.[3]

I would overrule Wilkerson’s sole
issue.

Conclusion

I would conclude that the trial
court correctly determined that it could exercise personal jurisdiction over
Wilkerson, and I would affirm the judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Keyes, dissenting.

 











[1]           The
majority claims:

 

            RSL produced no evidence to support
its allegation that Wilkerson used “www.local.yahoo.com” to publish his
comments in some fashion specifically associated with Houston.  There is only evidence that RSL printed out a
Yahoo! webpage that included a “local” reference in its web address (i.e. its
uniform resource locator, or URL).  The
evidence that Wilkerson’s comment was associated with Houston-related content
on Yahoo! is not evidence that Wilkerson was responsible for that association,
particularly if RSL or its Houston-based attorneys prepared the evidence of
what appears on Yahoo! from their Houston-located computers.

 

            Slip op. at 16–17. 
Wilkerson made no objection to the form of RSL’s evidence of
jurisdictional facts below, and he does not argue that the evidence of
jurisdictional facts is defective on appeal. 
The majority makes this argument and issues its ruling sua sponte and, in doing so, it
misapplies the law.  The burden of proof
in a special appearance is on the non-resident
to prove the absence of jurisdiction;
it is not on the resident plaintiff to prove the existence of facts sufficient
to subject the non-resident to the jurisdiction of the Texas courts.  See
CSR Ltd. v. Link, 925 S.W.2d 591, 596
(Tex. 1996) (“In Texas, a nonresident must negate all bases of personal
jurisdiction to prevail in a special appearance.”); Gonzalez v. AAG Las Vegas, L.L.C., 317 S.W.3d 278, 282 (Tex.
App.—Houston [1st Dist.] 2009, pet. denied) (“[A] nonresident defendant who
files a special appearance assumes the burden of negating all bases of personal
jurisdiction that the plaintiff has alleged.”). 
Moreover, even if the burden had been on RSL to prove jurisdictional
facts sufficient to establish jurisdiction over Wilkerson, as the majority
implicitly holds, rather than on Wilkerson to negate the factual basis of RSL’s
allegations, parties having an objection to the form of the evidence are
required not only to make their objection in the trial court but to secure a
ruling on the objection by that court, or the objection is waived.  See,
e.g., Commint Tech. Servs., Inc. v.
Quickel, 314 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2010, no pet.)
(discussing summary judgment evidence). 
Here, Wilkerson did not object to the form of RSL’s evidence, nor did he
attempt to negate the court’s jurisdiction over him by proving that he did not
use www.local.yahoo.com to publish his comments.





[2]
          Notably, in refusing to apply
the sliding scale for interactive websites in this case, the majority fails to
identify any prior Texas cases addressing interactive websites that have
similarly refused to use the sliding scale for such cases; rather, it cites
several Texas and one Fifth Circuit Court of Appeals case that do use it.  In support of its refusal to apply this
standard, the majority references, in its footnote 6, only unpublished cases of
no precedential value (and one published case) from other jurisdictions.  These cases present neither binding nor
persuasive authority and are also inapplicable in that they reference different
factual scenarios.  Likewise, the mostly
unpublished cases from other jurisdictions cited in the majority’s footnote 16
as failing to find that online defamatory statements were directed at the forum
state are neither binding nor persuasive authority, present different fact
patterns, and are inapplicable.  





[3]
          Wilkerson did not argue that exercise of personal jurisdiction would not
be fair and just; therefore, it is not necessary to address this issue.  See
Glattly v. CMS Viron Corp., 177 S.W.3d 438, 450 (Tex. App.—Houston [1st
Dist.] 2005, no pet.) (holding that defendant bears burden of presenting
“compelling case” that exercising jurisdiction over it would not be fair and
just); see also Guardian Royal Exch.
Assurance Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 231 (Tex.
1991) (holding that when non-resident defendant has purposefully established
minimum contacts, Texas court’s exercise of personal jurisdiction will not
comport with fair play and substantial justice “only in rare cases”).