**CHOICE AUTO BROKERS, INC., Appellant,**

v.

**Carl DAWSON, Appellees.**

No. 01–07–01035–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 25, 2008.

---

David C. Holmes, Leymon L. Solomon, Houston, TX, for Appellant.

Carl Dawson, Houston, TX, pro se.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

In this accelerated, interlocutory appeal, appellant, Choice Auto Brokers, Inc. ("CAB"), challenges the trial court's order denying its special appearance.

We reverse and render.

### Background

CAB is a Florida corporation that sells automobiles using both its own website and the internet auction site, eBay.[1]

---

1. "The usual eBay auction process is, after almost a decade in existence, now a matter of common knowledge of which the Court takes judicial notice. *See Fox v. West Palm Beach*, 383 F.2d 189, 194 (5th Cir.1967) ('The most frequent application of the judicial notice doctrine is common knowledge.') A seller advertises an item on the eBay interface, using a template. The seller establishes a minimum initial bid and a deadline for the item's auction to end. Buyers may then bid for the item through the eBay interface, which for each item posts the current bid and the time remaining. At the expiration of the auction period, the highest bidder wins the item. EBay puts the seller and winning buyer in

Dawson is a Texas resident, who purchased an automobile from CAB. Dawson found the automobile on CAB's website, which had a hyperlink to eBay to enable visitors to bid on vehicles through the online auction site. Because the website required that bidders who lacked a certain bidding history on eBay call before placing a bid, Dawson called CAB. He later purchased the car through eBay using the auction-ending function, "Buy It Now." Dawson's father took receipt of the car in Florida on Dawson's behalf. Due to mechanical problems, Dawson's father was unable to drive the car to Texas, and Dawson had it shipped to Texas.

Dawson sued for damages under the DTPA, alleging that CAB had not been truthful about the car's age and condition. Dawson argued that jurisdiction was proper because: (1) CAB had previously sold 43 vehicles to Texas residents over a three-year period; (2) CAB transported or arranged for the transportation of 19 of these to Texas; (3) CAB's website states in more than one place that a bid on a vehicle is a legally binding contract. In addition, CAB's website links directly to eBay, where customers can bid on the vehicles advertised on CAB's website.

CAB filed a special appearance, alleging that it does no business in Texas and was, therefore, not subject to personal jurisdiction in Texas. CAB stipulated that: (1) it maintained a website at the time of the sale; (2) visitors to its website could view pictures and specific details of vehicles it was offering for sale; (3) via the website, visitors could schedule a test drive of the vehicles; and (4) via the website, visitors could request additional information. CAB also provided printouts as exemplars of how the website looked at the time of the sale. In an affidavit attached to De-

fendant's Second Amended Special Appearance, Jean–Luc Ferrigno, the president of CAB, testified that: (1) CAB is a Florida corporation that does no business in the State of Texas; (2) CAB has no offices, employees, or facilities in Texas, nor does CAB own any property in Texas; (3) CAB does not engage in advertising that specifically targets Texas residents, as opposed to the residents of any other state; (4) CAB's advertising consists of paying a company that promotes vehicles for sale on behalf of numerous clients through internet listings that do not target the residents of any particular state; (5) unless otherwise requested by a client, the place of delivery is Florida; (6) CAB offers some of its products for sale through eBay and provides a link to eBay from its web page; (7) customers cannot purchase products from CAB through CAB's website; (8) customers can call CAB directly to negotiate a sale over the telephone; (9) the "Make an Offer" function on the CAB website sends an email to CAB; (10) in response to such an email, CAB calls the customer to discuss a potential sale; (11) CAB does not ship vehicles to Texas but will arrange for transportation outside of Florida through a third party; (12) a customer can request a test drive through the website, but the test drive must occur in Florida; and (13) CAB provides no warranties.

The trial court denied CAB's special appearance, and CAB timely appealed.

## Standard of Review

■■■ The existence of personal jurisdiction is a question of law reviewed de novo by this Court. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789 (Tex. 2002). However, this question must some-

contact by email to arrange payment and shipping." *Action Tapes, Inc. v. Weaver,* No. Civ. 3:05–CV–1693–H, 2005 WL 3199706, at *2 (N.D.Tex. Nov.23, 2005).

times be preceded by resolving underlying factual disputes. *Id.* at 794. When, as here, the trial court does not issue fact findings, we presume that the trial court resolved all factual disputes in favor of its ruling. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002).

### Personal Jurisdiction

■ "Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards." *Id.* (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991)); *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 2008) (Texas long-arm statute). The long-arm statute allows Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in the state. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2008). The Texas Supreme Court has held that "section 17.042's broad language extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit." *BMC Software,* 83 S.W.3d at 795.

■ Initially, the plaintiff bears the burden of pleading allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Am. Type Culture Collection,* 83 S.W.3d at 807. However, when a nonresident defendant files a special appearance, that defendant assumes the burden of negating all bases of personal jurisdiction that the plaintiff has alleged. *Id.*

■ Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* at 806 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). A nonresident defendant's minimum contacts must derive from purposeful availment: a nonresident defendant must have "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction to establish sufficient contacts with the forum to confer personal jurisdiction. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)); *Xenos Yuen v. Fisher,* 227 S.W.3d 193, 200 (Tex.App.–Houston [1st Dist.] 2007, no pet.). An act or acts "by which the defendant purposefully avails itself of the privilege of conducting activities" in Texas and "thus invok[es] the benefits and protections" of Texas law, constitutes sufficient contact with Texas to confer personal jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

■ We consider three elements of purposeful availment. *See Michiana Easy Livin' Country,* 168 S.W.3d at 785; *see also First Oil PLC v. ATP Oil & Gas Corp.,* No. 01–07–00703–CV, 2008 WL 2186781, at * 12–13 (Tex.App.–Houston [1st Dist.] May 22, 2008, no pet.). First, we consider only the defendant's own actions, not those of the plaintiff or any other third party. *Michiana Easy Livin' Country,* 168 S.W.3d at 785; *First Oil PLC,* 2008 WL 2186781, at *12; *see also U-Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762–63 (Tex.1977) (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240 (1958) ("The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The appli-

cation of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.")).

■ Second, the activities must be purposeful, not random, isolated, or fortuitous. *Michiana Easy Livin' Country*, 168 S.W.3d at 785; *First Oil PLC*, 2008 WL 2186781, at *12. "It is the quality rather than the quantity of contacts that is determinative." *First Oil PLC*, 2008 WL 2186781, at *12 (emphasis in original). Third, the defendant must seek some benefit, advantage, or profit by virtue of its activities in the proposed forum state, because this element is based on the notion of implied consent. *Michiana Easy Livin' Country*, 168 S.W.3d at 785; *First Oil PLC*, 2008 WL 2186781, at *12.

■ Our jurisdictional analysis is further divided into general and specific personal jurisdiction. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). General jurisdiction will attach when "a defendant's contacts in a forum are continuous and systematic permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Id.* To support general jurisdiction, the defendant's forum activities must have been "substantial," which requires stronger evidence of contacts than for specific personal jurisdiction. *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 114 (Tex.App.–Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

■ Specific jurisdiction lies when the defendant's alleged liability arises from or is related to an activity conducted within the forum. *BMC Software*, 83 S.W.3d at 796. "For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex.2007). This requirement assesses "the strength of the necessary connection between the defendant, the forum, and the litigation." *Id.*

### Internet Use & Personal Jurisdiction

■ Internet usage is divided into three categories, using a sliding scale, for the purposes of establishing personal jurisdiction. *Reiff v. Roy*, 115 S.W.3d 700, 705 (Tex.App.–Dallas 2003, pet. denied).[2] "At one end of the scale are websites clearly used for transacting business over the Internet, such as entering into contracts and knowing and repeated transmission of files of information, which may be sufficient to establish minimum contacts with a state." *Id.* "On the other end of the spectrum are

---

**2.** This test was first created in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* 952 F.Supp. 1119, 1124 (W.D.Pa.1997), and it has been adopted in the Fifth Circuit, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999), and applied by many Texas courts of appeals. *See GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 876 n. 21 (Tex.App.–Austin 2008, no pet.); *Karstetter v. Voss*, 184 S.W.3d 396, 404 (Tex.App.–Dallas 2006, no pet.); *Exito Elec. Co., Ltd. v. Trejo*, 166 S.W.3d 839, 858 (Tex.App.–Corpus Christi 2005, no pet.); *Townsend v. Univ. Hosp.-Univ. Of Colo.*, 83 S.W.3d 913, 922 (Tex.App.–Texarkana 2002, pet. denied); *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 507 (Tex.App.–Houston [14th Dist.] 2002, no pet.); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex.App.–Fort Worth 2001, no pet.); *Gessmann v. Stephens*, 51 S.W.3d 329, 338 (Tex.App.–Tyler 2001, no pet.); *Riviera Operating Corp. v. Dawson*, 29 S.W.3d 905, 911 (Tex.App.–Beaumont 2000, pet. denied); *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex.App.–San Antonio 1999, pet dism. w.o.j.).

'passive' websites that are used only for advertising over the Internet and are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state." Id. at 705–06. "In the middle are 'interactive' websites that allow the 'exchange' of information between a potential customer and a host computer." *Id.* at 706. Jurisdiction in cases involving interactive websites is determined by the degree of interaction. *Id.*

### Discussion

■■■ CAB's website was more than a purely passive website. The website provided advertising and some interactivity, because customers were able to email CAB through the website to schedule a test drive or request additional information about the vehicle. But the website did not allow a customer to enter into a contract or purchase a vehicle directly; rather, it routed the customer to eBay, where CAB had no control over who would be the highest bidder. Because the degree of interactivity falls between the two extremes, we look beyond the internet activity to the degree of interaction between the parties. *See Karstetter*, 184 S.W.3d at 405.

As to specific jurisdiction, the record shows that Dawson initiated the conversations with CAB and received the vehicle in Florida. There is no evidence that CAB made misrepresentations to Dawson in Texas. In fact, the record shows that the car initially malfunctioned while outside of Texas as well. Nothing in the record suggests that CAB's potential liability arises from or is related to an activity conducted within the forum. *See BMC Software*, 83 S.W.3d at 796; *see also Moki Mac River Expeditions*, 221 S.W.3d at 585. Therefore, we conclude that specific jurisdiction does not exist.

■■■ As to general jurisdiction, the record shows that CAB sold 43 vehicles to Texas purchasers, but the record does not quantify CAB's total sales. During the same time period CAB shipped, or arranged for shipping, nineteen of those vehicles to Texas. There is no indication in the record that CAB targeted Texas customers in any way. Nothing in the record shows that CAB maintained a physical presence in Texas, performed any business activities in Texas, or otherwise structures its business affairs to benefit from the Texas laws.

The Texas Supreme Court has held that an 18–year history of sales to Texas residents was insufficient to confer general jurisdiction, when Texas sales accounted for 3.5% of its total sales and title to the goods purchased passed outside of Texas. *Am. Type Culture Collection*, 83 S.W.3d 801, 807–09 (Tex.2002). In *American Type Culture Collection*, the defendant also purchased supplies from over 33 Texas vendors over a five-year period and sent representatives to five scientific conferences in Texas over a seven-year period. *Id.* at 808. But the defendant did not advertise in Texas or maintain a physical presence in Texas. *Id.* at 810. It performed its business services outside of Texas and constructed its contracts to ensure it did not benefit from Texas laws. *Id.* The supreme court concluded that these factors, taken together, did not establish a pattern of continuing and systematic activity sufficient to support the exercise of personal jurisdiction in Texas. *Id.* at 809–10.

Likewise, we hold that CAB's activities do not establish a pattern of continuing and systematic activity sufficient to support the exercise of personal jurisdiction in Texas. We hold that the trial court erred in denying CAB's special appearance.

### Conclusion

We reverse the trial court's order denying CAB's special appearance and render

judgment dismissing the case against it for lack of personal jurisdiction. The Clerk of this Court is directed to issue the mandate immediately. *See* TEX.R.APP. P. 18.6.