Opinion Issued April 22, 2010

 

 

 

 

 

 

 

 

 

 








          

 

 

 

 

 



 

 

In The

Court of Appeals

For The

First District of Texas

____________

 

NO. 01-09-00999-CV

____________

 

POLYCOMP ADMINISTRATIVE
SERVICES, INC., Appellant

 

V.

 

JONATHAN
DAVID JACKSON and BRENDA JACKSON, Appellees

 



 



 

On Appeal
from the 164th District Court

Harris
County, Texas



Trial Court Cause No. 
2009-41385

 






 

MEMORANDUM OPINION

          In this accelerated interlocutory appeal, appellant, Polycomp
Administrative Services, Inc. (Polycomp), challenges the trial court’s order
denying its special appearance. 
Appellees, Brenda and Jonathan D. Jackson, sued Polycomp, a non-resident
California corporation, alleging claims for violations of the Texas Securities
Act, the Texas Deceptive Trade Practices–Consumer Protection Act, breach of
fiduciary duty, common law fraud, negligence, and conspiracy.  Polycomp filed a special appearance that the
court denied.  In three issues, Polycomp
contends that the trial court erred by (1) denying its special appearance, (2)
failing to file findings of fact and conclusions of law, and (3) failing to
sustain Polycomp’s objection to the affidavit of Jason Gibson, the Jacksons’
attorney.  We conclude the trial court
erred in denying Polycomp’s special appearance. 
We do not reach Polycomp’s other two issues regarding the findings of
fact and conclusions of law and Gibson’s affidavit.  We reverse the trial court’s order and render
judgment granting the special appearance.

Background

Polycomp
provides benefit plan administration and consulting services for retirement
plans, cafeteria plans, self-directed IRAs, and association trusts.  It is a third-party administration firm and
provides record keeping and reporting services. 
Polycomp states in its pleadings that it is a foreign company that does
not maintain a regular place of business in Texas, does not have any agents in Texas,
and that it is a corporation organized under the laws of the State of
California.   

          The Jacksons asserts that they lost approximately
$515,000.00 of their retirement funds in an investment scheme run by
Diversified Lending Group, Inc. (DLG), a real estate investment firm.  The Jacksons claim that DLG raised funds by
selling securities to generate capital for its investment pool and that DLG
offered and sold its notes through a nationwide network of insurance agents and
salespeople.  They allege that after they
bought DLG investments, Polycomp served as a third party administrator for DLG
and was the intermediary between the Jacksons and DLG.  The Jacksons further allege that Brenda
signed Polycomp contracts in Texas introduced to her by a third party and that
Polycomp later sent Brenda quarterly account statements pursuant to Polycomp’s contractual
duties.  They contend that Polycomp should
be subject to the jurisdiction of Texas because Brenda signed a Polycomp
contract in Texas, Polycomp sent quarterly statements to Brenda who lives in
Texas, and the statements contained fraudulent misrepresentations.

To support
their allegations, the Jacksons presented evidence in the form of two Polycomp
“Contract[s] for Services” and two Polycomp “IRA Simplifier” contracts. In September
2007, Brenda signed the first two Polycomp contracts.  First, she signed an “IRA Simplifier”
contract issued by First Regional Bank of Woodland Hills, California, “care of
Polycomp.”  The contract establishes a
traditional individual retirement account (IRA), with Polycomp serving as
custodian of the account.  Second, Brenda
signed a Polycomp “Contract for Services” so that Polycomp could administer
Brenda’s self-directed IRA investment.  In
June 2008, Brenda signed two new, nearly identical, Polycomp service and
simplifier contracts.  The contracts
indicate that Brenda was a Texas resident at the time she signed the
contracts.  

The
Jacksons also presented affidavits by Brenda and Jonathan and an affidavit by
their attorney, Gibson.  Brenda’s
affidavit states that she signed the contracts in Texas and that Polycomp sent quarterly
account statements to her Texas address regarding her investment.  In Jonathan’s affidavit, he states he
witnessed Brenda sign the services contract and IRA Simplifier contract and
confirms that he and Brenda received quarterly account updates from Polycomp at
their home in Texas.  Gibson’s affidavit stated
that “to the best of his knowledge,” clients of his contracted with Polycomp
and that Polycomp sent statements to his clients.  

Finally,
the Jacksons presented images from Polycomp’s website.  The first image is of a “contact us” page that
includes addresses of three Polycomp offices in California.  The second image is of Polycomp’s online
client login page that includes an email address for technical support.  The third image is a login page entitled
“Self-directed IRA Account Information.”

          Polycomp presented evidence in the form of an affidavit
from its co-owner and CEO, Harry Veldkamp. 
In the affidavit, Veldkamp denied that Polycomp had any contacts in
Texas.  He stated, in part, that Polycomp
does not have a telephone listing in Texas, does not advertise in Texas, and
does not recruit Texas residents.  

The trial
court held a hearing and denied Polycomp’s special appearance.  After the trial court denied Polycomp’s
special appearance, Polycomp submitted a more detailed amended Veldkamp
affidavit.  Polycomp also filed a motion
for reconsideration and a request for findings of fact and conclusions of
law.  The trial court did not rule on the
motion for reconsideration and did not issue findings of fact and conclusions
of law.

Special Appearance

          In its first issue, Polycomp contends the trial court erred
by overruling its special appearance.  It
asserts there is no basis for asserting either specific or general jurisdiction
over Polycomp.  It further asserts that
asserting jurisdiction over Polycomp would violate traditional notions of fair
play and substantial justice.

          A.      Review of Trial Court’s Ruling and Implied
Findings

          Personal jurisdiction is a question of law which we review de
novo. 
Retamco Operating, Inc. v. Republic Drilling Co., 278 S.W.3d 333,
337 (Tex. 2009).  Although inquiring into
the merits would violate due process, a trial court must frequently resolve
preliminary questions of fact to determine the jurisdictional question.  Capital
Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd., 260 S.W.3d
67, 84 (Tex. App.—Houston [1st Dist.] 2008, no pet.). 

          When, as here, the trial court does not make findings of
fact and conclusions of law in support of its 120a ruling, we must infer “all
facts necessary to support the judgment,” on condition that they are raised by
the pleadings and have support in the record of the special-appearance
hearing.  Id. (quoting BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002)); see also Tri-State Bldg. Specialties, Inc.
v. NCI Bldg. Sys., L.P., 184 S.W.3d 242, 246 (Tex. App.—Houston [1st Dist.]
2005, no pet.) (citing Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002)) (stating that
reviewing court should presume trial court resolved all factual disputes in
favor of its judgment if trial court issues no findings of fact).  We consider only the evidence that favors the
trial court’s decision in addressing evidentiary challenges when the trial
court issues no findings of fact or conclusions of law, and we may sustain the
ruling on any reasonable theory that is consistent with the evidence and the
applicable law.  Id. 

          B.      Burden of Proof

          In a suit against a nonresident defendant, the initial
burden is on the plaintiff, in this case, the Jacksons, to plead sufficient
allegations to bring the defendant within the provisions of the Texas long-arm
statute.  See Kelly v. Gen. Interior Const., Inc., 301 S.W.3d 653, 658 (Tex.
2010).  In reviewing the Jacksons’
jurisdictional allegations, we ask only whether they are sufficient to invoke
exercise of personal jurisdiction over Polycomp without regard to the
merits.  Id.  When a plaintiff meets
its pleading burden, the burden of proof shifts to the nonresident defendant,
who must then negate all possible grounds for personal jurisdiction alleged by
the plaintiff.  Id.

C.      The
Law of Personal Jurisdiction

           “Texas courts may
assert in personam jurisdiction over
a nonresident if (1) the Texas long-arm statute authorizes the exercise of
jurisdiction, and (2) the exercise of jurisdiction is consistent with federal
and state constitutional due-process guarantees.”  Id.
(quoting Moki Mac River Expeditions v.
Drugg, 221 S.W.3d 569, 574 (Tex. 2007)).

 

1.       Texas
Long-arm Statute

          The Texas long-arm statute provides:

In addition to other acts that may constitute doing
business, a nonresident does business in this state if the nonresident:

 

(1)     contracts by mail or otherwise with a Texas resident and either
party is to perform the contract in whole or in part in this state;

 

(2)     commits a
tort in whole or in part in this state; or

 

(3)     recruits Texas residents, directly or through an intermediary
located in this state, for employment inside or outside this state.

 

Tex.
Civ. Prac. & Rem. Code § 17.042 (Vernon 2008).  The Texas
long-arm statute’s broad doing-business language “allows the statute to reach
as far as the federal constitutional requirements of due process will
allow.”  Retamco Operating, Inc., 278 S.W.3d at 337 (citing Moki Mac, 221 S.W.3d at 575).  Therefore, we only analyze whether Polycomp’s
acts would bring Polycomp within the jurisdiction of Texas consistent with
constitutional due process requirements. 
Id.

                    2.       Due
Process Constraints

          Under constitutional due-process analysis, personal
jurisdiction is achieved when (1) the non-resident defendant has established
minimum contacts with the forum state, and (2) the assertion of jurisdiction
complies with “traditional notions of fair play and substantial justice.”  Id.
at 338 (quoting Int’l Shoe Co. v. Wash.,
326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). 
We focus on the defendant’s activities and expectations when deciding
whether it is proper to call the defendant before a Texas court.  Id.


                             a.       Minimum Contacts

          A defendant establishes minimum contacts with a state when
it “purposely avails itself of the privilege of conducting activities within
the forum state, thus invoking the benefits and protections of its laws.”  Id.
(quoting Hanson v. Denckla, 357 U.S.
235, 253, 78 S. Ct. 1228, 1240 (1958)).  The
defendant’s activities, whether the activities consist of direct acts within
Texas or conduct outside Texas, must justify a conclusion that the defendant
could reasonably anticipate being called into a Texas Court.  Id.  A non-resident’s contacts can give rise
to either specific or general jurisdiction. 
Id. 

b.      General
Jurisdiction

General
jurisdiction arises when the defendant’s contacts with the forum are continuous
and systematic.  Id.  To support general
jurisdiction, the defendant’s forum activities must have been “substantial,”
which requires stronger evidence than for specific jurisdiction.  Preussag
Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 114 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism’d w.o.j.).  At
trial and on appeal, the Jacksons have not argued that Polycomp is subject to
the general jurisdiction of Texas.  The
Jacksons contend that Polycomp has made multiple contacts in Texas, but they
have never alleged that the contacts are “substantial.”  We conclude Polycomp is not subject to the
general jurisdiction of Texas.  See Credit
Commercial de France, S.A. v. Morales, 195 S.W.3d 209, 217 (Tex. App.—San
Antonio 2006, pet. denied) (applying only specific jurisdiction analysis;
holding that where neither party argues that general jurisdiction applies and
trial court only determined that appellants were subject to specific
jurisdiction, appellant is not subject to general jurisdiction of Texas).

                   c.       Specific Jurisdiction and Purposeful
Availment

Specific jurisdiction
arises when (1) the defendant purposefully avails itself of conducting
activities in the forum state, and (2) the cause of action arises from or is
related to those contacts or activities. 
Retamco Operating, Inc., 278
S.W.3d at 338 (citing Burger King Corp.
v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182 (1985); Nat. Indus. Sand Ass’n v. Gibson, 897
S.W.2d 769, 774 (Tex. 1995)).  In a
specific jurisdiction analysis, “we focus . . . on the ‘relationship
among the defendant, the forum [,] and the litigation.’”  Id.
(quoting Moki Mac, 221 S.W.3d at
575–76).

          We must first determine if Polycomp purposely availed
itself of the privilege of conducting activities in Texas.  We consider three issues.  Id.  First, only the defendant’s contacts with the
forum are relevant, not the unilateral activity of the plaintiff or a third party.  Id.
at 339.  Second, the contacts relied upon
must be purposeful rather than random, fortuitous, or attenuated.  Id.
 Thus, sellers who reach out beyond one
state and create continuing relationships and obligations with citizens of
another state are subject to the jurisdiction of the latter in suits based on
their activities.  Id.  Finally, the defendant
must seek some benefit, advantage or profit by availing itself of the
jurisdiction.  Id.  In conducting this
analysis, we focus on the quality and nature of the defendant’s contacts,
rather than the number of contacts.  Id. 

          In their petition the Jacksons allege:

14.     Th[e trial
court] has jurisdiction over Defendants because Defendants have done business
in Texas, committed a tort in Texas and have had continuous contacts with
Texas.  In addition, the damages for
which Plaintiffs bring suit exceed the minimum jurisdictional limits of the
court.

 

In the Jacksons’ response
to Polycomp’s special appearance they allege the trial court has jurisdiction over
Polycomp because Polycomp purposely availed itself through (i) four contracts,
(ii) updates and statements, (iii) an internet website, and (iv) profiting from
Texas activities.  We address the
Jacksons’ responses separately. 

 

i.        Four
Contracts

The first
element of purposeful availment is that a defendant can only trigger specific
jurisdiction through its own conduct, not the unilateral acts of the plaintiff
or third parties.  See IRA Res., Inc. v. Griego, 221 S.W.3d 592, 596 (Tex. 2007).  The Jacksons assert four contracts show
Polycomp triggered specific jurisdiction through its own conduct.  They alleged

13.     Polycomp
is subject to the Texas Long Arm Statute because [it] contracted with the
Jacksons, who are Texas residents. 
Specifically, Brenda Jackson signed four separate Polycomp documents: a
2007 and 2008 Polycomp “contract for services” and a 2007 and 2008 IRA
simplifier.  Each of the four contracts
were signed at Safe Equity Planning in Friendswood, Galveston County, Texas. 

                             

The
Jacksons first support their allegation with a 2007 and 2008 “Contract for
Services.”  The 2007 and 2008 Contracts
for Services note that, “This contract shall become effective and binding upon
Polycomp when duly accepted as indicated by a dated signature by an authorized
representative of Polycomp.”  The 2007
version of the Contract for Services includes no signature at all from any
person claiming to represent Polycomp. 
The 2008 version of the “Contract for Services” has a signature of a
Polycomp “consultant” but has no date next to the signature.  Both Contracts for Services note that
Polycomp is a “Third Party Administrator” and that Polycomp is a “California
corporation.”   

The
Jacksons also support their allegations with a 2007 and a 2008 IRA Simplifier
contract.  The 2007 and 2008 IRA
Simplifier contracts are contracts with First Regional Bank “care of Polycomp.”  Each includes a signature of Brenda and the
date she signed.  The 2007 IRA Simplifier
contract includes a signature of a “custodian” and the date the custodian
signed.  The 2008 IRA Simplifier contract
does not include the custodian signature. 
Both contracts include the language stating, “If it is necessary to
apply any state law to interpret and administer this Agreement, the law of our
domicile shall govern.”  The evidence
shows Polycomp is domiciled in California. 
Both IRA Simplifier contracts repeatedly note that Polycomp has a
custodial role only and that Brenda has “exclusive responsibility for and
control over the investment of the assets [in her] IRA.”

In
addition, the Jacksons included three affidavits, one from Brenda, one from
Jonathan, and one from Gibson, the Jacksons’ attorney.  In Brenda’s affidavit, she states, in part:

I signed a contract for
services with [Polycomp] at Safe Equity Planning in Friendswood, Galveston
County, Texas on September 17, 2007.  I
also signed a Polycomp IRA simplifier at that same time that I signed the
contract.  The contract and simplifier
were presented to me in Texas by Paul Brown of Safe Equity Planning. . . . 

 

After signing the Polycomp
contract and IRA simplifier, I received quarterly updates from Polycomp at my
home in Deer Park, Texas, Harris County. 
The quarterly updates showed my investment with DLG was growing.  I later discovered the statements were false
and the investment was not growing. 
Occasionally, Polycomp would send newsletters to my home. 

 

In Jonathan’s affidavit
he states he witnessed Brenda sign a Contract for Services and an IRA
simplifier contract at Safe Equity Planning in Friendswood, Galveston County,
Texas.  He also confirms that he and
Brenda received quarterly updates from Polycomp at their home in Deer Park,
Harris County, Texas.  Gibson’s affidavit
notes that to the “best of his knowledge” his clients have signed contracts
with Polycomp and Polycomp has sent statements to his clients.  

The
Contracts fail to show that Polycomp had any purposeful contact with
Texas.  First, the evidence indicates
Polycomp is not a party to either the 2007 or 2008 Contract for Services.  By the contracts’ own terms, before Polycomp
can be a party to the contract, the contract requires a “dated signature” from
a representative of Polycomp.  The contracts
specifically state, “This contract shall become effective and binding upon
Polycomp when duly accepted as indicated by a dated signature by an authorized
representative of Polycomp.”  Each
Contract for Services lacks either a date or a signature, or both.  Similarly, it appears that Polycomp is not a
party to the 2008 IRA Simplifier contract because a representative of Polycomp
did not sign.  Polycomp, however, does
appear to be a party to the 2007 IRA Simplifier Contract because the contract
includes a signature from a Polycomp “consultant.”  It appears, therefore, that Polycomp is a
party to at least one of the contracts.

A contract
does not alone constitute a sufficient “contact” for due process purposes.  See id.
at 597–98 (citing Burger King Corp., 471 U.S. at 478, 105
S. Ct. at 2185 (noting that if question is whether contract with nonresident
defendant can establish sufficient minimum contacts, “we believe the answer
clearly is that it cannot”)).  Here, both
the 2007 and 2008 IRA Simplifier contracts include language that California’s
laws are to govern the contract.  The
contracts, therefore, are some evidence that Polycomp intended to subject
itself to the jurisdiction of California, not Texas.  See
Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 792–93 (Tex.
2005) (noting that insertion of clause designating foreign forum suggests that no
local availment was intended); see also
Burger King Corp., 471 U.S. at 482, 105 S. Ct. at 2187 (holding that
choice-of-law provisions should not be ignored in considering whether defendant
has “purposefully invoked the benefits and protections of state’s laws”).  

As proof
that Polycomp purposely availed itself, the Jacksons point to evidence that
shows Brenda signed the contracts in Texas. 
In Brenda’s affidavit she states that she signed the 2007 Contract for
Services at Safe Equity Planning in Friendswood, Galveston County, Texas in
2007.  But, as noted above, Polycomp does
not appear to be a party to the 2007 Contract for Services because there is no
signature or date in the area where Polycomp would affix a dated
signature.  

Brenda
further states in the affidavit that Paul Brown of Safe Equity Planning
presented the Contract for Services and the IRA Simplifier contract to her when
she signed it in Friendswood.  Although
Brenda implies that Paul Brown of Safe Equity Planning is an agent of Polycomp,
the record undisputedly shows that Polycomp is a registered California
corporation with no agents in Texas.  

Brown
could be an apparent agent if Polycomp either knowingly permitted Brown to hold
himself out as having authority or showed such lack of ordinary care as to
“clothe [Brown] with indicia of authority.” 
See Griego, 221 S.W.3d at
596.  The record, however, shows no
evidence of apparent authority.  Both
Brenda’s and Jonathan’s affidavits state that Brown worked for Safe Equity
Planning, and nowhere do they state in the affidavits that either Brown or Safe
Equity Planning was associated with Polycomp. 
Although Brown may have provided Polycomp contracts to Brenda to set up
a self-directed IRA, and Polycomp may have later processed the contracts, the
contracts expressly defined Polycomp’s role as a mere custodian.  Nothing in the contracts gives Brown an
indicia of authority.  See id. 


The
contracts, however they ended up in Texas, indicate clearly that Polycomp
stands outside the investment transaction between the Jacksons and Brown, Safe
Equity Planning, or BLG.  See id. 
Texas law does not presume agency, and the party who alleges it has the
burden of proving it.  See id. 
Nothing in this record shows that Polycomp had knowledge, much less
control, over Brown or his employer, whose unilateral actions cannot subject
Polycomp to specific jurisdiction in Texas. 
We conclude the Jacksons have failed in their burden to show Polycomp
triggered specific jurisdiction through its own conduct.

                             ii.       Website

 

The second
step in showing purposeful availment requires the Jacksons to show that
Polycomp’s contacts with Texas were purposeful and not random, fortuitous, or
attenuated.  Before the trial court, in
their response to Polycomp’s special appearance, the Jacksons assert Polycomp
made purposeful contact with Texas through their website.  They state 

22.     . . .
Polycomp hosts a website that is online in Texas for the purpose of advertisement,
the exchange of information with potential clients, and business transactions
with established clients.  Specifically,
the website allows potential clients to fill out an online form to send
information to Polycomp and allows established clients to fill out an online
form to send information to Polycomp and allows established clients to login to
access “self-directed” account information. 


 

They support the
allegation with images of the website. 
The first image of Polycomp’s website shows a webpage that lists the
addresses of Polycomp’s offices in California and a “Contact us” field.  The second image is a “Plan Administration
Client Login” page.  The page includes a
technical support email address.  The
final image is of an account information page entitled “Self-directed IRA
Account Information.”  

The
website alone fails to show that Polycomp’s contacts with Texas were purposeful
and not random, fortuitous, or attenuated. 
For the purposes of establishing personal jurisdiction, Internet usage
is divided into three categories, and is determined using a sliding scale.  Choice
Auto Brokers, Inc. v. Dawson, 274 S.W.3d 172, 177 (Tex. App.—Houston [1st
Dist.] 2008, no pet.).  “At one end of
the scale are websites clearly used for transacting business over the Internet,
such as entering into contracts and knowing and repeated transmission of files
of information, which may be sufficient to establish minimum contacts with a
state.”  Id. (quoting Reiff v. Roy,
115 S.W.3d 700, 705 (Tex. App.—Dallas 2003, pet. denied)).  “On the other end of the spectrum are ‘passive’
websites that are used only for advertising over the Internet and are not
sufficient to establish minimum contacts even though they are accessible to
residents of a particular state.”  Id. at 177–78 (quoting Reiff, 115 S.W.3d at 705–06).  “In the middle are ‘interactive’ websites
that allow ‘exchange’ of information between a potential customer and a host
computer.”  Id. at 178 (quoting Reiff,
115 S.W.3d at 706).  Jurisdiction in
cases involving interactive websites is determined by the degree of
interaction.  Id.  

The record
does not make clear how interactive the website is.  Accepting as true the Jacksons’ assertions
that the website allows “potential clients to fill out an online form and send
information to Polycomp” and that the website allows “established clients to
login” to the website to access information, these assertions do not show that
the website was more than “interactive” because the assertions, and images of
the website, do not show that the Jacksons could enter into contracts with
Polycomp or that Polycomp could make knowing and repeated transmission of files
of information.  See Choice Auto Brokers, 274 S.W.3d at 178.  Because the degree of interactivity falls in
either the “passive” or “interactive” categories, the website alone does not
show purposeful conduct, and we look beyond the internet activity and review
other evidence of the degree of interaction between the parties.  See id.
at 178; see also Daimler-Benz Aktiengesellschaft
v. Olson, 21 S.W.3d 707, 725 (Tex. App.—Austin 2000, pet. dism’d w.o.j.)
(interactive website alone insufficient to subject appellant to jurisdiction of
Texas court).

iii.      Updates
and Statements

 

The Jacksons contend on appeal that quarterly statements and
newsletters, sent from Polycomp to Brenda, show that Polycomp’s contacts were
purposeful.  The Jacksons alleged

14.     . . . Polycomp
issued quarterly updates to the Jacksons in Texas which claimed DLG was
investing their funds in real estate and indicated the Jacksons’ fund was
growing, when in fact it was not.

 

. . . .

 

18.     . . . Polycomp
contracted with the Jacksons in Texas for administrative services in their
investment with DLG.  Pursuant to the
contract, Polycomp mailed quarterly account statements to the Jackson’s [sic]
residence in Deer Park, Harris County, Texas. 
Each of these statements were directed to Texas and contained
misrepresentations of material fact . . . .

 

The
Jacksons did not present any statements to the trial court to support their
allegation.  The Jacksons did sign
affidavits stating Polycomp sent quarterly statements to their address, but
assuming the affidavits are accurate, quarterly statements fail to show that
Polycomp’s contacts were purposeful and fail to disprove that any contact was
not random, isolated, or fortuitous.  The
contracts state that the Jacksons are solely responsible for all investment
decisions and Polycomp’s duty was to act only as a passive custodian of the
Jacksons’ IRA account.  See Griego, 221 S.W.3d at 598.  Although Polycomp sent account statements to
Texas, this administrative paperwork is a mere incident of Polycomp’s custodial
role.  See id.  Furthermore, the
evidence shows Polycomp performed the obligations of its custodial role in
California.  The evidence indicates that
Polycomp has no bank account or postal box in Texas, and the record does not
show that any of its employees ever traveled to Texas for business.  There is no evidence that shows Polycomp
either instigated or authorized any significant activity in Texas.  Instead, all of its actions under the
contracts incurred in California.  

We
conclude that Polycomp’s contacts with Texas—agreeing to administer Brenda’s
IRA account and sending the Jacksons quarterly account statements—are too
inconsequential to support a claim that it purposefully directed its activities
here.  See id. (holding that appellant’s contacts with Texas, which
included only agreeing to administer appellee’s IRA account, accepting payment
for opening account, and sending appellee periodic account statements, were too
inconsequential to support claim that it purposefully directed its activities
to Texas); Morales, 195 S.W.3d at
220–21 (holding minimum contacts may not be satisfied by merely engaging in
communications with Texas entity during performance of contract); see also Freudensprung v. Offshore Tech.
Servs., Inc., 379 F.3d 327, 344 (5th Cir. 2004) (“[T]his court has
repeatedly held that the combination of mailing payments to the forum state,
engaging in communications related to the execution and performance of the
contract, and the existence of a contract between the nonresident defendant and
a resident of the forum are insufficient to establish the minimum contacts
necessary to support the exercise of specific personal jurisdiction over the
nonresident defendant.”); Holt Oil &
Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986) (holding that
defendant was not subject to specific jurisdiction where nonresident defendant
entered into contract with Texas resident, sent agreement and checks to Texas,
and engaged in extensive telephonic and written communications with plaintiff
in Texas).

                             iv.      Profited by Availing Itself in Texas

 

Finally, the
Jacksons have failed to show that any financial benefit to Polycomp derived
from a constitutionally cognizable contact with Texas.  See
Griego, 221 S.W.3d at 598 (citing Michiana,
168 S.W.3d at 788).  The Jacksons alleged

20.     . . . Polycomp
profited by availing itself in Texas. 
Polycomp made money off of the services it provided to the Jacksons and
other investors.  Polycomp also
advertised and administered its services via the internet to Texas investors.

 

As we have
pointed out, the evidence does not show Polycomp’s actions resulted in a
constitutionally cognizable contact.  See id. 
The evidence shows the opposite. 
The IRA Simplifier contract, for example, stipulates that any dispute
would be governed by the state of Polycomp’s domicile, which is
California.  While a foreign
choice-of-law provision does not prevent Texas courts from also exercising
personal jurisdiction, the choice-of-law provision cannot be ignored.  Id.
(citing Burger King, Corp., 471 U.S.
at 482, 105 S. Ct. at 2187).  Although
the IRA Simplifier contract does not require that disputes be litigated in
California, this choice-of-law provision, when combined with the fact that the
evidence shows the Jacksons initiated contact with Polycomp, which rendered all
of its services within California, demonstrates that Polycomp never anticipated
Texas jurisdiction.  See id.  The allegations and
evidence fail to show a minimum contact with Texas.  We, therefore, conclude the Jacksons cannot
show Polycomp financially benefited from a cognizable contact with Texas.

                   d.      Conclusion of Minimum Contacts
Analysis

Because
the Jacksons are unable to show through their allegations and evidence that
Polycomp purposely availed itself of the privilege of conducting activities in
Texas, they are unable to meet their burden of 
proof to show Polycomp had the minimum contacts in Texas
constitutionally necessary for Texas to exercise specific jurisdiction over
Polycomp.  We hold that Polycomp’s
actions do not constitute the “purposeful availment” required to exercise
specific jurisdiction.  See id.; see also Meader v. IRA Res., Inc., 178 S.W.3d 338, 345, 349 (Tex.
App.—Houston [14th Dist.] 2005, no pet.) (holding that appellee’s contacts,
which included accepting $50 account-initiation fee, opening appellant’s
self-directed IRA, and mailing appellant periodic account statements, were
constitutionally insufficient contacts to meet minimum contacts test).  

          Having determined that the Jacksons are unable to show Polycomp
has minimum contacts with Texas sufficient to support specific jurisdiction, we
do not need to determine whether an assertion of jurisdiction over Polycomp
comports with “traditional notions of fair play and substantial justice.” See Anchia v. DaimlerChrysler AG, 230
S.W.3d 493, 503 (Tex. App.—Dallas 2007, pet. denied).

          We sustain Polycomp’s first issue.

Findings of Fact and Invalid
Affidavit

Regarding
Polycomp’s second issue that challenges the trial court’s refusal to issue
findings of fact and conclusions of law, we do not reach this issue because
Polycomp has been able to successfully present its appeal without those
findings.  See, e.g., White v.
Harris-White, No. 01-07-00521-CV, 2009 WL 1493015, at *7 (Tex. App.—Houston
[1st Dist.] May 28, 2009, pet. denied) (mem. op., not designated for
publication) (holding trial court’s failure to make requested findings of fact
and conclusions of law harmless because appellant was able to present his case
on appeal); see also Pelican State Physical Therapy,
L.P. v. Bratton, No. 01-06-00199-CV, 2007 WL 2833303, at *4 (Tex.
App.—Houston [1st Dist.] Sept. 27, 2007, no pet.) (mem. op., not designated for
publication) (noting that granting of special appearance is ruling for which
findings of fact and conclusions of law are allowed, but are not required).

Finally,
we do not reach Polycomp’s third issue regarding Gibson’s affidavit.  Assuming that Polycomp properly preserved
error and that the affidavit was valid, Polycomp would still prevail because
the affidavit provides no additional evidence that would allow the Jacksons to
meet their burden of proof regarding Polycomp’s contact with Texas.




 

Conclusion

          

We reverse
the order of the trial court and render an order granting Polycomp’s special
appearance.

 

                                                                   

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of
Chief Justice Radack, and Justices Alcala and Higley.