# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00298-CV

**Warren Chevrolet, Inc., d/b/a Green Family Chevrolet,
f/k/a Green Chevrolet Chrysler, Appellant**

**v.**

**Talam Jamal Qatato, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-16-005988, HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Talam Jamal Qatato, an Austin resident, bought a Chevrolet Camaro from Green Family Chevrolet (Green Chevrolet), an automotive dealership incorporated in Iowa with its principal place of business in Illinois. Qatato later sued Green Chevrolet in Travis County district court for fraud, violations of the Texas Deceptive Trade Practices Act (DTPA),[1] and other causes of action arising from his purchase of the Camaro. Green Chevrolet filed a special appearance contesting personal jurisdiction, which the district court denied. We reverse the district court's order denying Green Chevrolet's special appearance and render judgment dismissing the case for want of jurisdiction.

---

[1] *See* Tex. Bus. & Com. Code § 17.41 *et seq*.

## BACKGROUND[2]

After Qatato saw a 2015 Chevrolet Camaro Z28 on Autotrader.com, he called Green Chevrolet, the dealer that advertised the Camaro for sale, at the dealer's location in East Moline, Illinois. Negotiations ensued between Qatato and Green Chevrolet for the sale of the Camaro, primarily through text messages and emails. During their negotiations, Green Chevrolet represented to Qatato that the Camaro was a "GM Certified Pre-Owned" vehicle in "excellent" condition. Qatato ultimately purchased the Camaro. The terms and conditions of the sales contract included a forum-selection clause that provided that any litigation in connection with the sale would occur in Illinois.

Qatato arranged and paid for a transportation company to pick up the Camaro in Illinois and have it delivered to Austin. When Qatato examined the Camaro upon arrival, he observed damage to the vehicle, including rust throughout its undercarriage. Qatato then took the Camaro to an automotive shop for a State of Texas inspection, where it failed both the tire and emissions portions of the inspection, and needed all four tires replaced. Qatato later sought to return the Camaro and receive a refund of the purchase price. Green Chevrolet refused. This litigation followed.

## STANDARD OF REVIEW

"Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550,

---

[2] The following recitation of facts is based on the evidence admitted at the special-appearance hearing, including testimony by Qatato, an affidavit by Eric Dressing, the Vice President of Green Chevrolet, and the sales contract for the Camaro.

558 (Tex. 2018) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). "However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds." *Id*.

When reviewing the legal sufficiency of the evidence, courts view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Gonzales v. Maggio*, 500 S.W.3d 656, 662 (Tex. App.—Austin 2016, no pet.). Courts indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822; *Gonzales*, 500 S.W.3d at 662. When reviewing the factual sufficiency of the evidence, courts consider and weigh all of the evidence in the record, and set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Gonzales*, 500 S.W.3d at 662. Courts then review de novo any legal conclusions drawn from the facts. *See Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 592 (Tex. App.—Austin 2015, no pet.) (citing *BMC Software*, 83 S.W.3d at 794).

## ANALYSIS

"Texas courts may exercise personal jurisdiction over a nonresident if '(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is

consistent with federal and state constitutional due-process guarantees.'" *Old Republic*, 549 S.W.3d at 558 (quoting *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 149; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). "The long-arm statute is satisfied by a defendant who 'commits a tort in whole or in part in this state.'" *Id*. at 558–59 (quoting Tex. Civ. Prac. & Rem. Code § 17.042(2)).

"However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Id*. at 559 (citing *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 149; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005)). "To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (internal citations and quotations omitted).

### General jurisdiction

"A defendant's contacts may give rise to general or specific jurisdiction." *Old Republic*, 549 S.W.3d at 559. Qatato alleges that the district court has both general and specific jurisdiction over Green Chevrolet. We address each in turn.

A court may exercise general jurisdiction over a defendant "only if its 'affiliations with the [s]tate are so continuous and systematic as to render it essentially at home in the forum [s]tate.'" *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). "Continuous and systematic contacts that fail to rise to this relatively high level are insufficient to confer general jurisdiction over a nonresident defendant." *Id*.

"Courts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state." *Id*.

Here, Eric Dressing, the Vice President of Green Chevrolet, averred that Green Chevrolet is "an Iowa corporation with its principal place of business in Illinois." Dressing also maintained:

> Defendant has no offices, no real or personal property, no employees and no facilities in the State of Texas; Defendant has no telephone listing, no bank account, and it has never appointed an agent for service of process, in Texas. Defendant does no advertising that specifically targets Texas residents, as opposed to the residents of any other state; since November of 2013 through the present, Defendant's advertising includes paying Autotrader.com[,] which promotes vehicles for sale on behalf of numerous clients through the internet and does not target the resident of any particular state. [Defendant] has a website; customers cannot purchase a vehicle through Defendant's website alone but must contact Defendant by phone in Illinois to negotiate the purchase of a vehicle; and the test drive of any vehicle sold to any potential buyer must occur in Illinois and, in some cases, in neighboring Iowa. The Defendant's location is in East Moline, Illinois.

This evidence establishes that Green Chevrolet is neither incorporated in Texas nor has its principal place of business here.

Nevertheless, Qatato asserts that the district court has general jurisdiction over Green Chevrolet by virtue of a contract that exists between Green Chevrolet and CDK Data Services, Inc., a company headquartered in Austin that manages the information systems and websites for all GM dealers, including Green Chevrolet. A contract with a third-party vendor, however, fails to establish that Green Chevrolet's affiliations with Texas are so continuous and systematic as to render it "essentially at home" here. *See Daimler AG*, 571 U.S. at 139; *Searcy*, 496 S.W.3d at 72–73; *see also*

5

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168–71 (Tex. 2007) (concluding that corporation's contracts with Texas companies, payments to Texas vendors, and two "isolated trips" to Dallas by company employees were insufficient to establish general jurisdiction). Thus, the district court does not have general jurisdiction over Green Chevrolet.

**Specific jurisdiction**

We next address whether the district court has specific jurisdiction over Green Chevrolet. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), guides our analysis here. In *Michiana*, a Texas resident "decided to buy a $64,000 Coachmen recreation vehicle sight unseen." *Michiana*, 168 S.W. 3d at 781. The seller was "an outlet store that only did business in Indiana." *Id*. The buyer "called [the seller] in Indiana, sent payment to Indiana, paid for delivery from Indiana, and agreed to resolve every dispute in Indiana. But when a dispute actually arose, he filed suit in Texas." *Id*. The Texas Supreme Court ruled that the buyer could not bring suit in a Texas court because the seller lacked "minimum contacts with Texas." *Id*.

The *Michiana* court explained that "'purposeful availment'" is "the touchstone of jurisdictional due process." *Id*. at 784. In assessing whether the seller in *Michiana* had so availed itself of the privilege of conducting activities within Texas, the court identified three relevant factors. "First, it is only the defendant's contacts with the forum that count: purposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'" *Id*. at 785. "Second, the acts relied on must be 'purposeful' rather than fortuitous. Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens from another state' are subject to the jurisdiction of the

6

latter in suits based on their activities. By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are random, isolated, or fortuitous." *Id*. "Third, a defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id*.

The seller's contacts with Texas in *Michiana* did not amount to "purposeful availment." The seller did not initiate the contact with the Texas buyer and the decision to ship the RV to Texas was made by the buyer unilaterally—"the seller had no say in the matter." *Id*. at 787. Further, the seller sought no benefits from Texas law. Once the sale was complete and the RV was shipped to Texas, the seller had everything it wanted out of the contact "in hand" and needed no further protection from Texas law. *Id*. And the *Michiana* court rejected the argument that the seller's alleged misrepresentation to the buyer in Texas was enough to establish specific jurisdiction. In so doing, the court emphasized that the focus of specific jurisdiction analysis is the "'relationship among the *defendant*, the forum, and the litigation,'" rather than among the "'*plaintiff*, the forum . . . and the litigation.'" *Id*. at 790 (emphasis in original). Specific jurisdiction, the court held, turns on defendant's contacts themselves, not on whether the contacts were tortious. *Id*. at 792.

Green Chevrolet's contacts do not satisfy the requirements for personal jurisdiction set forth in *Michiana*. As in *Michiana*, "[t]he sale at issue here was initiated entirely by" the buyer. *Id*. at 784. Qatato contacted Green Chevrolet about the vehicle after conducting a search on Autotrader.com, a website which is not affiliated with the seller. Like the seller in *Michiana*, Green Chevrolet had "everything it wanted out of the contract in hand" once the sale was complete. *See id.* at 787. In both cases, the buyer sent full payment to the seller, and also paid for and arranged for the vehicle to be transported to Texas. Similar to *Michiana*, the decision in this case to ship the

7

vehicle to Texas was "entirely that of the purchaser; the seller had no say in the matter." *See id.* And like the buyer in *Michiana*, Qatato agreed to resolve disputes associated with the sale in Illinois, and conceded that he did not plan to drive the Camaro to Illinois for regular maintenance. *See id*. at 781, 787. Thus, as was the case in *Michiana*, it is "hard to imagine" in this case "what possible benefits and protections" Green Chevrolet enjoyed from Texas law from the isolated sale at issue here. *See id.* at 787.

Qatato contends that the multiple phone calls, text messages, emails, and other correspondence between Green Chevrolet and him establish personal jurisdiction, but, as *Michiana* noted, advances in technology have made communication via phone, email, and text an unreliable indicator of purposeful availment. *Id.* at 791. Many of these communications were brief, perfunctory text messages, such as "No problem," Yes we can," "I will check," and "OK," sent in rapid succession. And, in any event, virtually all of the communications concerned an isolated sale and were prompted by Qatato. Responding to a customer's inquiries in a single sale does not amount to a purposeful act "to create continuing relationships and obligations with citizens from another state," which the *Michiana* court deemed necessary to create personal jurisdiction. *Id.* at 785. The few times that Green Chevrolet initiated contact, it was to send Qatato occasional announcements, discount offers, and reminders that it may be time to service the vehicle, but "random, isolated, or fortuitous" contacts such as these are not sufficient to establish personal jurisdiction. *Id*.

*Michiana* also forecloses Qatato's arguments that the terms of the warranty and Green Chevrolet's alleged misrepresentations establish personal jurisdiction. Although the warranty states that Green Chevrolet "will pay 100% of the labor and 100% of the parts for the covered systems that

8

fail within the warranty period," it also indicates that any "authorized GM dealer can make the warranty repairs" and that the customer may "contact a GM dealer in the United States, Canada or Mexico for warranty service." The warranty further specifies that "[a]ll GM dealers are authorized to perform qualifying warranty repairs on Certified Pre-Owned vehicles." Qatato acknowledged that he was aware of these terms, and that he did not plan to bring the Camaro to Green Chevrolet for routine services. Therefore, the warranty does not create the kind of "continuing relationship" described in *Michiana*, between the out-of-state defendant and a Texas resident that would give rise to personal jurisdiction. *See id.* at 787 (explaining that a long-term agreement contemplating many contacts over time may establish minimum contacts). And with respect to Qatato's contention that Green Chevrolet's allegedly tortious conduct establishes jurisdiction, *Michiana* held to the contrary that defendant's contacts themselves—not whether the contacts are tortious—are the dispositive factor in determining whether jurisdiction exists. *Id.* at 792 (disapproving of opinions by intermediate courts of appeal that "specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves"); *see also GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 873–74 (Tex. App.—Austin 2008, no pet.). For the reasons already stated, Green Chevrolet's "conduct and connection to the forum" here do not support jurisdiction.

Finally, Qatato contends that Green Chevrolet purposefully availed itself of Texas through its online marketing efforts, including advertising on Autotrader.com and using its own website to interact with customers and potential customers. The vice-president of Green Chevrolet averred, however, that Green Chevrolet "does no advertising that specifically targets Texas residents, as opposed to the residents of any other state" and that Autotrader.com "promotes vehicles for sale

9

on behalf of numerous clients through the internet and does not target the resident of any particular state." Qatato presented no contrary evidence establishing that Green Chevrolet targets Texas residents specifically, either through Autotrader.com or other national websites. *See Michiana*, 168 S.W.3d at 785–86 (explaining that unless defendant "directs" its marketing efforts specifically to Texas, "additional conduct" is required to conduct purposeful availment); *Riverside Exps., Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that "a business cannot be said to avail itself of the privilege of conducting activity in a particular state" when it engages in "undifferentiated advertising, which is accessible nationally and even internationally"). Moreover, the interaction between the parties on Green Chevrolet's website was minimal as it relates to the operative facts that gave rise to this litigation. Qatato's claims arise out of his agreement to purchase the Camaro. Most of Green Chevrolet's alleged misrepresentations as to the quality and condition of the Camaro were made via phone calls, text messages, emails, and documents mailed to Qatato, and not through its website.[3] Accordingly, Green Chevrolet's website does not give rise to specific jurisdiction. *See Choice Auto Brokers, Inc. v. Dawson*, 274 S.W.3d 172, 177–78 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Karstetter v. Voss*, 184 S.W.3d 396, 405 (Tex. App.—Dallas 2006, no pet.) (concluding that defendants' use of "interactive website" was insufficient to confer personal jurisdiction where "the interaction between

---

[3] After this litigation commenced, Qatato visited Green Chevrolet's website to order parts and accessories. Qatato's claims, however, do not involve the parts and accessories that he ordered. Additionally, placing the order appears to have been primarily a litigation tactic. Qatato had already sold the Camaro by the time that he visited the website under the pretense of ordering ground effects and a cargo net for that vehicle. Further, Qatato testified that he "requested the parts and accessories . . . on the basis of [the] advice of [his] attorney to demonstrate the interactivity of the website."

10

the parties was minimal," "[t]he email correspondence between the parties relating to the single purchase was initiated by [the buyer]," and defendants' contact with forum state was "random, isolated, and fortuitous").

## CONCLUSION

The district court erred in concluding that it has personal jurisdiction over Green Chevrolet. Accordingly, we reverse the district court's order denying Green Chevrolet's special appearance and render judgment dismissing the case for want of jurisdiction.

_____
Michael Toth, Justice

Before Justices Puryear, Goodwin, and Toth

Reversed and Rendered

Filed:   December 21, 2018